In the Matter of the Application of TOWNS & JAMES, INC., Petitioner. GEORGE BARASCH, as President of the Allied Trades Council, Respondent.

Supreme Court, Special Term, New York County, March 23, 1950.

*Abraham Mann* for petitioner.

*Harold L. Luxemburg* for respondent.

HOFSTADTER, J.    The petitioner moves to stay arbitration under a collective bargaining agreement between it and a labor union.

The respondent at first appeared specially and moved formally to dismiss the petition on the ground that the proceeding was not maintainable against it, under its association name, but should have been brought against its president or treasurer in accordance with section 13 of the General Associations Law. The petitioner countered with a cross motion to correct what it characterized as the misnomer in the caption and to name the union's president as respondent.    On the return of the motion, the parties stipulated in open court that the respondent's motion to dismiss be withdrawn and the petitioner's motion to amend be granted by substituting the union's president as respondent. The order to be entered hereon will carry this stipulation into effect.

The collective bargaining agreement follows generally the pattern of such agreements.    The agreement dated November 3, 1947, was to be in effect from that date until October 31, 1950, and to be automatically renewed thereafter for similar periods unless notice was given by either party of a desire to change the agreement wholly or in part or to terminate it completely. Article XXIV makes the following provision for the annual revision of wages or working hours: " *Article XXIV.*    \*    \*    \* It is further understood and agreed that during the term of this agreement either party may by a thirty-day written notice, mailed on or before September 30th, 1948, 1949 and 1950, request the other party to negotiate for a revision of the wages or working hours of the employees."

In accordance with the foregoing clause, the union, under date of August 10, 1949, gave the petitioner written notice that " we are ready to begin negotiations for wage revisions for all your employees ". Extended negotiations between the parties ensued but no agreement was reached. The petitioner asserts that, until the letter of January 19, 1950, shortly to be mentioned, the only demands which had been made on it by the union and which were the subject of negotiation were for a pension plan and for adjustments in the base pay of eight employees whose pay rates were claimed to be out of line. The petitioner supports this assertion by a lengthy recital of the course of the negotiations and by exhibits. While the union disputes this claim and interprets its position differently, it is fair to say that throughout their efforts to come to terms the parties dealt chiefly, if not entirely, with these two demands. Certainly the union did not in the conferences held, ask for a general increase in wages.

On January 19, 1950, the respondent's president sent the petitioner this letter:

" At a meeting held on January 17th, 1950 your employees completely rejected everything that has been negotiated to date.

" I was directed to inform you that the employees are at present interested only in an increase in salary which would amount totally to thirteen cents an hour.

" I wonder if you could advise me whether there is any purpose in calling a conference with a view in mind to settling wage adjustments. If there isn't, the only alternative that I have left is to submit it to arbitration. Please advise."

The petitioner on January 24, 1950, sent a reply in which it stated that the negotiations had until then been confined to the two items already noted, charged the respondent with failure to bargain in good faith, and expressed the view that unless the respondent was prepared to continue the discussion of the two specific items there was no reason for further meetings.

On January 24, 1950, the respondent, pursuant to the collective bargaining agreement, served the petitioner with formal notice of arbitration of the following issue: " 1. Whether the employees shall receive an increase in salary of not more than thirteen (13¢) cents an hour retro-active to November 1st, 1949."

The petitioner thereupon instituted the present proceeding to stay the arbitration so initiated by the union. The following is the pertinent portion of the arbitration clause in the agreement: " ARTICLE XVI. ARBITRATION. Should any claim, dispute or controversy arise between the parties concerning any condition,

provision or term contained in any ARTICLE of this agreement, or any alleged breach or interpretation thereof, which cannot be adjusted by negotiation, such claim, dispute or controversy, including any claim for damages by either party for breach of this contract, shall be submitted to arbitration, to the AMERICAN ARBITRATION ASSOCIATION, #9 Rockefeller Plaza, New York City.'' The petitioner challenges the right to arbitrate this controversy on two grounds: (1) The union's omission from its original notice of August 10, 1949, of the demand for an increase of thirteen cents an hour and its failure to present this demand in the subsequent negotiations; (2) The nonarbitrable nature of the controversy.

It is unnecessary to decide whether the first ground is well taken. It is at least questionable whether a comprehensive demand, wholly free of itemization such as that addressed to the petitioner on August 10, 1949, can be so whittled away by the turn of later negotiations as to foreclose assertion or consideration of a particular demand merely because it is brought forward late in the day. The original letter of August 10, 1949, called generally for '' wage revisions '' and the final request for an increase in salary of thirteen cents an hour, though perhaps, as argued by the petitioner, a bolt out of a clear sky, was nevertheless nothing other than a proposed wage revision. The almost inevitable fluidity of such negotiations makes it difficult to accept the petitioner's thesis as a safe rule of decision. However, the present application can be disposed of without determining the validity of the thesis.

The petitioner's second line of attack proceeds on the contention that a dispute flowing from the inability to agree on a wage revision is not arbitrable under the collective bargaining agreement. I had occasion to consider this question in the *Matter of Berger (World Broadcasting System, Inc.)* (191 Misc. 870, affd. 274 App. Div. 789) in which a dispute over a new scale of salaries incident to a reopening provision was held not to be arbitrable under the agreement there involved. A like result has been reached in other cases. (*Matter of Int. Assn. of Machinists [Cutler-Hammer, Inc.]*, 271 App. Div. 917, affd. 297 N. Y. 519; *Vasek* v. *Matthews & Co.*, 79 N. Y. S. 2d 5; *McCarten* v. *Brooklyn Bridge Freezing & Cold Storage Co.*, 81 N. Y. S. 2d 494.) The underlying reason for these decisions is that the reopening clause does not oblige the employer and the union to agree on a wage revision and that the arbitration clause does not express their intention to allow an arbitrator to

agree for them when they are unable themselves to come to terms.

While there is no inherent objection to committing to an arbitrator the power to impose a new agreement on the parties, the intention to vest him with this power should be expressed clearly and not left to surmise. I find no such expression in the agreement now before me. True, the language of the present agreement is not the same as that in the *Berger* case (*supra*) and in the other cases cited. The union invokes the more elaborate and detailed terms of the arbitration clause in this case to support its contention that the dispute arising from inability to agree on a wage revision is within its orbit. Essentially, however, the clause here, for all its added verbiage, does not differ from that in the *Berger* case (*supra*). In form the two clauses may not be alike; in substance and intent, however, they are the same. In final analysis, each commits generally to arbitration all disputes under the agreement which the parties themselves cannot adjust otherwise. The jurisdiction so conferred was held in the *Berger* case (*supra*) not sufficiently explicit to render arbitrable the dispute over a proposed wage revision. The principle on which the *Berger* case (*supra*) was decided applies here.

The respondent urges also that the petitioner has waived its right to contest the arbitrability of a wage revision dispute, because in 1948–1949 it participated in an arbitration of such a dispute and consented to the confirmation by this court of the arbitrator's award. There is no claim that the arbitrability of the dispute was then raised or litigated. Since practical construction cannot override the plain language of a written agreement (*Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125, 133), it is doubtful whether the doctrine of practical construction is available to the respondent. Whatever motivated the petitioner's acquiescence in the earlier arbitration, this single incident hardly bespeaks the adoption of a deliberate or settled policy. In the circumstances, the petitioner should not be held to have committed itself irrevocably or to have deprived itself of the right to test the arbitrability of the controversy.

The motion for a stay is granted. Settle order,