In the Matter of NORTH AMERICAN PHILIPS COMPANY, INC., Petitioner. INTERNATIONAL ASSOCIATION OF MACHINISTS, LODGE No. 1709, et al., Respondents.

Supreme Court, Special Term, New York County, March 27, 1951.

*Henry Clifton, Jr., H. Gardner Ingraham* and *Frank J. Mack* for petitioner.

*Vladeck & Elias* for respondents.

HOFSTADTER, J. This application to stay arbitration once more presents the troublesome question whether a controversy between an employer and a labor union is within the ambit of a broad arbitration clause of a collective bargaining agreement.

The collective bargaining agreement, an elaborate and detailed document containing sixteen articles and an appended schedule embodying the wage agreement and printed in a booklet of thirty-two pages, was entered into as of February 1, 1950, and was to remain in effect until January 31, 1951. In it the petitioning employer recognizes the union as the bargaining agency for " all hourly paid production and maintenance employees " at its plant, " excluding all foremen, assistant foremen, other supervisory employees * * * managerial employees, office employees, watchmen and other salaried employees." It declared in section 2 of article I that the term " employee " refers " only to employees in the job classifications set forth in Schedule A."

The controversy of which the union seeks, and the employer by this application for a stay resists, arbitration arises out of the performance by ten specific employees, as part but not all of their assigned duties, of production and maintenance work. Concededly none of these ten employees is in the bargaining unit set up by the agreement, that is, none of the ten is in any of the job classifications enumerated in the schedule incorporated in the agreement. The following are the job classifications

of the ten employees whose activities have created the controversy: " X-ray Serviceman," " Supervisor," " Engineer Class B, Analysis, Design, Development, Research " and finally " Clerk." It is not disputed that these ten employees held the foregoing job classifications when the collective bargaining agreement was made; nor does the respondent union appear to challenge the employer's assertion that at that time they were also doing the work of which the union now complains. So far as the papers before me disclose, there has been no change in the work assignment of these ten employees since the collective bargaining agreement was entered into. The employer's statement that no employee in the bargaining unit has been discharged, laid off or curtailed in his work because of the work done by these ten employees is likewise not denied.

With this statement of the dispute between the parties we consider whether it is arbitrable within the frame-work of the collective bargaining agreement. The jurisdiction of the arbitrators springs from that agreement and must be found in it, fairly construed. (*Matter of Int. Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, affd. 297 N .Y. 519; *Matter of Belding Heminway Co.* [*Wholesale & Warehouse Workers' Union*], 295 N. Y. 541; *Matter of Berger* [*World Broadcasting System*], 191 Misc. 1043, 1048, affd. 274 App. Div. 788; *Matter of B. F. Curry, Inc.* [*Reddeck*], 194 Misc. 527; *Matter of Towns & James* [*Barasch*], 197 Misc. 1022, affd. 277 App. Div. 857.)

The problem posed is in no sense peculiar either to arbitration or to collective bargaining agreements. It is merely that of interpreting a written agreement. The court searches for the intent of the parties found at times in its plain language and at others in the surrounding circumstances and in those factors which the court commonly calls to its aid in the process. The intent so found is either that clearly expressed, or that ascertained from the language read in the light of these aids.

In the present case the provisions of the agreement are not so clear or explicit that decision may with assurance be placed on its language alone. Article VII prescribing the grievance procedure begins with the comprehensive statement: " *Section 1*: All differences, disputes and grievances that may arise between the Union and the Employer shall be taken up as follows: "

There is certainly nothing in this unqualified declaration expressive of a purpose to confine the grievance machinery within narrow limits.

It is unnecessary to state the successive steps to the settlement of a grievance. It may, however, be noted that there is nothing in the form or character of the grievance procedure to exclude or render inappropriate its application to the existing dispute.

Article VIII, governing arbitration, follows the pattern of article VII already quoted. It begins: *"Section 1.* All differences, disputes or grievances that shall not have been settled satisfactorily after following the procedure in Article VII shall, at the request of the Union or the Employer, be promptly submitted to arbitration by a Board of Arbitration.''

In opposing arbitration the employer stresses this limitation on the power of the board of arbitration in article IX: '' The Board of Arbitration, acting under this Agreement, shall have no power to modify or supplement the provisions of this Agreement or to impose any obligations on the parties which are not specifically provided for by this Agreement or which are in contravention of law.'' The petitioner urges that since the agreement does not obligate it to have all production or maintenance work performed by employees in the bargaining unit or prohibit or otherwise restrict its freedom to permit such work to be done by the ten employees already mentioned, the contemplated arbitration may impose on it an obligation not specifically assumed and thus go beyond the jurisdictional limitation set by article IX. This contention, however, proves too much. Logically pursued it would exclude arbitration in practically all cases, for rarely does or indeed can an agreement impose specific obligations to cover every case which may become the subject of dispute. In most instances the absence of specific provision creates the controversy. Yet, were the petitioner's position adopted, the very situation out of which the dispute grows would deprive the arbitrators of the power to pass on it. For this reason I do not think that article IX defeats the right to arbitrate the present dispute.

The petitioner also invokes the following portion of section 4 of article III:

'' The Employer shall have the right to hire and dismiss or discipline any employee and the right to direct the working operations of the plant, consonant with the terms of this Agreement.

'' The Employer shall have the right in its absolute discretion to determine the number of employees necessary from time to time for the operation of its business.''

The petitioner urges that were the arbitrators to require the discontinuance by the particular ten employees of the work they now do, to which the union objects, the employer would have to reassign the work to employees in the bargaining unit and thus be compelled to employ a greater number of employees than efficient operation dictates. In my opinion the employer misreads the quoted portion of article III. While this provision reserves to the employer the prerogatives normally residing in management, it does not override everything else in the agreement.

The rigidity of the bargaining unit for which the employer argues is moreover refuted by a provision not adverted to in the briefs. Article II gives the employer the right to establish new classifications and provides that classifications so established shall be deemed included in those listed under section 2 of article I. Thus, by the very terms of the agreement the bargaining unit may be changed.

Schedule A, the wage agreement, which establishes job titles, evaluation points, labor grades and wage rates and provides for their application, also declares that " all differences, disputes, and grievances " as to its application, with an exception immaterial here, shall be taken up in accordance with the grievance and arbitration procedure set forth in the agreement. The kind of dispute in the application of schedule A was at least likely to be akin to the dispute with which we are now concerned. Yet, the parties freely subjected disputes under schedule A to arbitration.

Another point made by the employer is that in the negotiations for a renewal agreement to take effect on February 1, 1951, the union sought a provision confining the work here in question exclusively to employees in the bargaining unit, the employer refused to accede, and the agreement finally executed does not contain the requested provision. The conduct of negotiations in such a situation is, however, charged with so many elements that I find this argument wholly inconclusive. A somewhat analogous contention was made in *Matter of Local 474, Nat. Food Chain Store Employees (Safeway Stores)* (79 N. Y. S. 2d 493, affd. 274 App. Div. 779) and rejected for a like reason.

Study of the present collective bargaining agreement persuades me that it does not expressly exclude the dispute from the operation of the grievance and arbitration procedure prescribed in it. Nor, in my opinion, can it fairly be said that the dispute itself is such that the parties must have intended to with-

draw it from the prescribed procedure. It seems rather that the dispute is of the very sort likely to arise in day-to-day operations under a collective bargaining agreement between parties circumstanced as are those to this proceeding. The question is not of enlarging the bargaining unit to include the ten employees not now in it — a matter perhaps, as contended by the petitioner, within the exclusive competence of the National Labor Relations Board. The question is merely whether under the agreement work said to be performable by those already in the bargaining unit may properly be done by those outside of the unit. None of the cases cited by the petitioner requires a holding that the controversy here is not arbitrable. In some respects the dispute between these parties is very much like that considered and held arbitrable in *Matter of Local 474, Nat. Food Chain Store Employees (Safeway Stores)* (79 N. Y. S. 2d 493, affd. 274 App. Div. 779, *supra*). There too the employer leaned on clauses safeguarding from invasion the area within which management was to have a free reign. (See, also, *Matter of Royal Typewriter Co. [Mechanical & Elec. Workers Union]*, N. Y. L. J., Sept. 6, 1950, p. 381, col. 1.)

Bearing in mind always that the prime objective of collective bargaining is the maintenance of industrial peace, I conclude that the dispute between the petitioner and the respondents is arbitrable. Accordingly the motion for a stay is denied and the proceeding is dismissed.