**PITTSBURGH RAILWAYS COMPANY, a corporation, Plaintiff,**

v.

**AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYES OF AMERICA, DIVISION 85, Defendant. Civ. No. 17442.**

United States District Court
W. D. Pennsylvania.
July 31, 1959.

------

Frank R. Bolte, Pittsburgh, Pa., for plaintiff.

Charles M. Thorp, Jr., Joseph E. Madva, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

JOHN L. MILLER, District Judge.

Section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), confers jurisdiction on federal district courts of suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting interstate commerce. The plaintiff employer brought this proceeding under Section 2201 of the Declaratory Judgments Act, 28 U.S.C.A. § 2201, to obtain a declaration of the rights of the parties under a collective bargaining agreement and for incidental relief. The plaintiff is an employer engaged in an industry affecting commerce. The court has jurisdiction. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972; New Bedford Defense Products Division v. Local No. 1113, D.C.D.Mass., 160 F.Supp. 103, affirmed 1 Cir., 258 F.2d 522. The defendant has filed a motion to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted. Although the court has jurisdiction of this suit, it is not under compulsion to exercise that jurisdiction, and the motion is addressed to the court's discretion. Brillhart v. Excess Insurance Company of America, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620. Because the parties have presented matters outside of the pleadings which have been examined by the court, the motion is to be treated as one for summary judgment and disposed of as provided in Rule 56, F.R.Civ.P., 28 U.S.C.A., Rule 12(b), F.R.Civ.P.

There is substantial agreement on the following facts:

In 1954, the parties entered into a collective bargaining agreement containing, in Section I, the following language:

"Should any dispute arise between the parties concerning the interpretation or application of any section or sections in this agreement which cannot be adjusted, the matter shall be submitted to a board of arbitration for decision as provided for hereafter, and during such arbitration, the employes shall continue in the employ of the Company. The party demanding arbitration shall request the same in writing, stating the question or questions to be arbitrated and naming its arbitrator. Within six (6) days thereafter, excluding Sundays and holidays, the other party shall name its arbitrator. The two thus selected shall endeavor to reach an agreement and if they fail to do so within fifteen (15) days they shall select a third arbitrator, and the decision of the said board of arbitration shall be final and binding on both parties. If one party demands arbitration and the other fails or refuses to name its arbitrator within said six (6) days as herein provided, it shall forfeit its case and the demands of the party requesting the arbitration shall be deemed to have been granted. If the two arbitrators do not come to an agreement within fifteen (15) days and fail to agree upon a third arbitrator within six (6) days thereafter, the two parties shall then agree upon a method which will insure the selection of a third arbitrator. Each party shall bear the expense of the arbitrator of its own

selection, and the expense of the third arbitrator and the joint expenses incidental to the arbitration shall be borne equally by the parties."

Section XXI of the agreement (entitled "Illness Benefits") contained a provision for sick pay to hourly rated employees with a year or more of service. Sick leave under the provision was allowed for seven days a year after the first three days of illness and was cumulative for a maximum of sixty-five days. The section also provided:

"If an employe becomes entitled to payments for sick leave, there shall be deducted therefrom payments made on account of the particular illness under (1) the Company's Group Accident and Sickness Plan, (2) *the Company's so-called Welfare Plan*, and (3) the Workmen's Compensation Act." (Emphasis supplied.)

The agreement contained provisions relating to the Group Accident and Sickness Plan under which premium costs were shared, by the Company and the employees, but no terms relating to the "so-called Welfare Plan."[1] Under the 1954 agreement, the Union demanded arbitration of a dispute relating to an employee named John Vaughn. The grievance stated:

"Operator John Vaughn was injured in line of duty and did not receive his full regular compensation for the period during which he was injured. Mr. Vaughn claims full payment for the period of his injury, and the Union requests arbitration of this grievance in behalf of John Vaughn and all other employees similarly situated. This grievance is based on the entire contract, including but not limited to Section XXI, and past practices."

The Company refused to submit to arbitration on the ground that the Union was seeking payment to employees of monies on account of the defendant's "so-called Welfare Plan" and that accordingly the dispute did not involve the interpretation or application of any section of the collective bargaining agreement. The Company asserted that the plan was one unilaterally established and administered by it. On the Company's refusal of arbitration, the Union applied successfully to the Court of Common Pleas of Allegheny County for a rule to show cause why it should not proceed to arbitration. The Court of Common Pleas in an opinion[2] by Judge Henry X. O'Brien held that the disputed matters "are covered in sections of the collective bargaining agreement," and stated that "the contention of the defendant is plainly a legitimate argument to be presented to the arbitrators." The rule was made absolute. The Company however elected not to name its arbitrator and, thus, under the contract the demands of the Union were deemed to have been granted.

At a later date, claiming to be employees similarly situated to John Vaughn, employees Phillip Buszinski, E. R. Crawford, A. A. Bathory and D. W. Little brought suit in assumpsit against the Company in the Court of Common Pleas of Allegheny County, Pennsylvania, to recover the difference between their regular compensation and the amount they had received under the Workmen's Compensation Act during periods of unemployment resulting from injuries. Their suit was dismissed by the Court of Common Pleas in May 1958[3] on the ground that the election of the Company not to appoint its arbitrator in the

---

1. Payment of illness benefits, or sick pay, is to be distinguished from payments under the "so-called Welfare Plan."

2. Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Division 85 v. Pittsburgh Railways Co., No. 3296 October Term 1955, 25 L.A. 304, exceptions dismissed 105 Pittsb.Leg.J. 329.

3. No. 2076 October Term 1957 in the Court of Common Pleas of Allegheny County. The opinion was written by Judge Anne X. Alpern, now Attorney General of the Commonwealth of Pennsylvania.

Vaughn dispute had not established any contractual duty by the Company to pay employees other than Vaughn and that the court's decision in the suit between the Union and the Company relating to the Vaughn grievance conferred no rights on any employee. The court said however that the Company was required to arbitrate the issue and that the Union (which was not a party to the suit) was not foreclosed from taking appropriate steps for procuring arbitration of the grievance of the plaintiffs. It dismissed the action without prejudice to the plaintiffs "to proceed with their claims as outlined above."

On October 29, 1958, the Union designated its arbitrator and submitted to arbitration five disputes involving the similar claims for compensation of Buszinski, Crawford, Bathory, Little and another employee, Stanley Bonczak. The disputed question was still whether those employees were entitled to the difference between their regular pay and the Workmen's Compensation payment received by them during time off from work because of injury.

The Union claimed full regular compensation for Buszinski, Crawford, Bathory and Little "as employes similarly situated to John Vaughn" and in the alternative, "on the basis of the entire contract in effect at the time of their injuries, the contracts subsequent thereto, and the present contract, including in each case, but not limited to Section XXI, and past practices." Compensation for Bonczak was claimed on the basis of "the entire contract, including but not limited to, Section XXI, and past practices."

On November 6, 1958, the Company designated its arbitrator. At the same time it notified defendant that it considered the disputes not arbitrable and demanded that the question of arbitrability be submitted to arbitration as a preliminary issue. Its letter read as follows:

"In response to your letter of October 29, 1958, we note that the claims of Buszinski, Crawford, Bath-

ory and Little are predicated primarily on their alleged similarity to the grievance of John Vaughn, entitled Grievance No. 6, which our Company elected to forfeit. You know, or should know, that the Court of Common Pleas of Allegheny County, at No. 2076 October Term, 1957, in an Opinion by the Honorable Anne X. Alpern, held specifically that our election with respect to the Vaughn grievance conferred no rights upon Buszinski, Crawford, Bathory or Little. Since the appeal in that case has been withdrawn, the decision of the Court of Common Pleas is clearly binding on the parties.

"Moreover, it is our position that the claims of the above-stated four employes, as stated by you in the alternative, as well as the claim of Stanley Bonczak, are not arbitrable under our agreement with your Union. Section 1 of the Agreement obligates our Company to arbitrate only those disputes which concern 'the interpretation or application of any section or sections in this agreement'. The claims set forth in your letter do not involve the interpretation or application of any section of the contract. It would seem to follow, therefore, that such claims and the disputes arising therefrom are not arbitrable.

"However, the Court of Common Pleas of Allegheny County, in an Opinion by the Honorable Henry X. O'Brien, ruled at No. 3296 July Term, 1955, that our contention that the aforesaid Grievance No. 6 of John Vaughn was not arbitrable was 'plainly a legitimate argument to be presented to the arbitrators' for their decision. Since the instant claims relate to the Company's Welfare Plan, as did John Vaughn's claim, Judge O'Brien's ruling would seem to require submission to arbitration of the question of the arbitrability of such claims. To dispose of these questions in an orderly fashion, we will insist that that

question be decided before a Board of Arbitration inquires into the merits of the claims.

"Accordingly, we hereby designate Mr. M. M. Drake as our arbitrator and assure you that he will be available for discussion of the further procedure in this matter at the convenience of your designated arbitrator or his substitute."

On November 12, 1958, defendant sent the following reply to the plaintiff:

"This will acknowledge receipt of your letter of November 6, 1958 regarding the claims of Buszinski, Crawford, Bathory, Little and Bonczak. We note that you have appointed Mr. M. M. Drake as your arbitrator. In view of the fact that you have appointed your arbitrator, it is not necessary for us to discuss the contentions made in your letter. We simply take this occasion to advise you that we disagree with them.

"Mr. Zimring has advised us that he is unable to serve as our arbitrator. We, therefore, appoint Mr. Bernard Cushman of 1001 Connecticut Avenue, N. W., Washington, D. C. as our arbitrator reserving the right to substitute for him in the event he is unable or unwilling to serve. We have requested Mr. Cushman to communicate with Mr. Drake."

The plaintiff interpreted defendant's reply as a rejection of its demand that the issue of arbitrability be submitted to arbitration prior to arbitration of the disputes on the merits and commenced this suit. It contends that it is unable to obtain a preliminary determination of that issue except on application to this court. The complaint also alleges that the disputes are not arbitrable because they do not involve the interpretation or application of any section of the current collective bargaining agreement or of agreements previously in effect, because there is no contractual or enforceable obligation on its part to make such payments, because the claims for compensation did not arise under the cur-

rent agreement and because they were not prosecuted within a reasonable time after the claims arose and within a reasonable time after the expiration dates of collective bargaining agreements in effect when they arose.

The complaint alleged that Bathory's period of disability occurred in January and February 1954, and that the collective bargaining agreement then in effect expired April 30, 1954; that the period of disability of Crawford was from February to May 1954, and that the collective bargaining agreement then in effect expired April 30, 1955; and that the period of disability of Little was from November 28, 1955, to February 17, 1956, and that the collective bargaining agreement then in effect expired August 31, 1957; and that the period of disability of Buszinski was from December 19, 1956, to April 24, 1957, and that the collective bargaining agreement then in effect expired August 31, 1957. It alleges that no request for or submission to arbitration was made by or in behalf of any of the claimants prior to October 29, 1958.

We have set forth the facts thus in detail because of the complex background from which this action for declaratory relief comes to us. The reasons why we have concluded defendant's motion cannot be granted may be stated with relative brevity.

■■ It is well established that Section 301(a) of the Labor-Management Relations Act does not only confer jurisdiction on federal district courts but also empowers them to fashion a body of federal substantive law for the enforcement of collective bargaining agreements. Federal law fashioned in accord with the policy of national labor laws is controlling over state law governing the same matters although state law may in the end contain the rule that "will best effectuate the federal policy." Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. at pages 456, 457, 77 S. Ct. at page 918. Resort by federal courts to the state law for governing rules in the interpretation of collective bargain-

ing agreements is therefore not mandatory but permissive and selective.

■ We shall deal shortly with the controversy arising from plaintiff's averments and defendant's denials that the Union rejected plaintiff's demand in the letter of November 6, 1958, for preliminary arbitration of the question of the arbitrability of the disputes. While the court may not, on such a motion, resort to affidavits or exhibits for the purpose of resolving disputed fact questions, Frederick Hart & Co. v. Recordgraph Corporation, 3 Cir., 169 F.2d 580, it is perfectly proper to consider defendant's present statement of willingness now, as then, to arbitrate on plaintiff's terms. If no more were involved, the lack of actual controversy as to defendant's willingness to arbitrate would warrant dismissal for mootness under the discretion conferred on the court by the Declaratory Judgments Act.

■ Still there would remain controversy over plaintiff's contention that the disputes are in fact not arbitrable, a contention by which plaintiff repudiates the position stated in its November 6, 1958 letter. Under the circumstances, no estoppel arises from plaintiff's designation of its arbitrator so as to prevent such change of position. The defendant does not dispute plaintiff's right to obtain a preliminary judicial determination of whether the disputes in question are arbitrable. But it contends that that has already been done in the state courts of Allegheny County, Pennsylvania. The doctrine of *res judicata* has been variously urged by both parties but we think it has nothing to do with the case. The rule of *res judicata* applies to repetitious suits involving the same cause of action and provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are bound thereafter as to all matters offered and received to sustain or defeat the claim or demand and as to any matter which might have been offered for that purpose. Commissioner

of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898.

■ In the state court suit by employees Buszinski, et al., against the company, the issue presented was the same as that involved here. But as the Union was not a party to the proceeding in the Court of Common Pleas of Allegheny County, and, as that court expressly held, plaintiff employees were not in privity with the Union, Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510, the rule of *res judicata* cannot be applied to bar this suit.

■ Nor are we foreclosed from examination of the present controversy by reason of a collateral estoppel stemming from resolution of the Vaughn grievance. Forfeiture of the Vaughn grievance by virtue of the 1954 contract had the same effect as an award in arbitration or of a judgment in an action, 3 Am.Jur., Arbitration and Awards, §§ 130, 139, and there was, of course, the judgment of the state court holding the dispute arbitrable. However although the parties are here the same, the cause is different. Where a second action between the same parties is upon a different cause or demand, *res judicata,* strictly, does not apply and the rule of collateral estoppel operates to relieve of redundant litigation only of the *identical* question previously involved. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 598, 68 S.Ct. 715. Modification of significant facts or in controlling legal principles renders it inapplicable in subsequent suits.

"Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is con-

sidered just and desirable, reliance may be placed upon the ordinary rule of *stare decisis*. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment." 333 U.S. 601–602, 68 S.Ct. 721.

It appears from the complaint that only one of the claims presented—that of Crawford—would arise under the 1954 contract which was involved in the Vaughn dispute. But in addition to separability of the contracts involved, there are intervening doctrinal changes—mandatory resort to federal law—which justify independent examination of this suit. See 50 C.J.S. Judgments §§ 650, 652, 674 (1947); Restatement, Judgments § 70 Comments (e) and (f); cf. Towns & James, Inc. v. Barasch, 197 Misc. 1022, 96 N.Y.S.2d 32.

■ Proceeding to the substance of the motion, it does not appear from undisputed facts that defendant is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.

The grievances which defendant seeks to have arbitrated do not involve the interpretation or application of any express section of the contract. Seemingly, they involve implied obligations under the terms of "the Company's so-called Welfare Plan," which is barely referred to in a section of the contract dealing with illness benefits. Although that section spells out the Company's right to deduct from illness benefits, monies distributed to employees under the "Company's so-called Welfare Plan," there are no specific terms in the writing itself from which arbitrators might determine whether the Company was or was not obligated to make such payments. Nor can we hold, on this record, that defendant is entitled to judgment as a matter of law on the basis of "the entire contract." For although it could be asserted that the statement of intent and purpose of the parties to improve and maintain harmonious relations between Union and employer authorizes arbitration of grievances not expressly or impliedly excluded from arbitration, we regard such expressions as merely an aid to construction—together with other indications of the scope of the contract.[4] And finally, defendant has not established a case for judgment as a matter of law on the basis of "past practices," the nature of which has not as yet even been disclosed. See Restatement, Contracts § 247 (1932).

Denial of the motion is further required because a material factual question is presented as to whether, if the dispute is arbitrable, all conditions precedent to arbitration have been faithfully performed. As stated in Boston Mutual Life Insurance Co. v. Insurance Agents' International Union, 1 Cir., 258 F.2d 516, 522,

> " * * * whether the Employer had agreed to submit this matter to arbitration depends upon a determination by the court, as a preliminary matter, whether all the conditions precedent to arbitration have been fulfilled, including a determination whether the Union acted 'within a reasonable time' in pressing for arbitration by the American Arbitration Association."

Except on fuller examination of the surrounding facts and circumstances it could not be determined if reasonable men would not differ whether defendant acted within a reasonable time in initiating arbitration procedures on the grievances in dispute.

---

4. See Lodge No. 12, Dist. No. 37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 5 Cir., 257 F.2d 467, 471; Local 205, United Elec., Radio and Machine Workers of America (U. E.) v. General Electric Company, 1 Cir., 233 F.2d 85, 101.