**LOCAL UNION NO. 28, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

v.

**MARYLAND CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INCORPORATED, a Maryland Corporation.**

Civ. No. 12926.

United States District Court
D. Maryland.
April 24, 1961.

Patrick A. O'Doherty and William A. Hegarty, Baltimore, Md., for plaintiff.

William D. Macmillan, James P. Garland, and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff Union seeks a declaratory judgment construing its collective bargaining agreement with defendant Association and declaring whether the agreement has been effectually terminated by the Union. Jurisdiction is claimed under sec. 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185. Reference is also made to the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202. The case is presently before the court on the Association's motion to dismiss, for lack of jurisdiction over the subject matter.

After alleging that plaintiff Union is a "labor organization" within the meaning of 29 U.S.C.A. § 152(5) and is the collective bargaining representative for employees engaged in an industry affecting commerce within the meaning of 29 U.S.C.A. § 152(7), the complaint refers to the agreement [1] between the parties, dated March 7, 1958, which provides:

"Article I—*Effective Date—Termination—Amendments—Disputes*

"Sec. 1. This agreement shall take effect April 1, 1958, and shall remain in effect until April 1, 1959. It shall continue in effect from year to year thereafter, from April 1 through March 31st of each year, unless changed as hereinafter provided.

"Sec. 2. Either party desiring to change this agreement must notify the other in writing at least 60 days prior to April 1st of any year. When notice of changes only is given, the nature of the changes desired must be specified in the notice and until a satisfactory conclusion is reached in the matter of such changes the original provisions shall remain in full force and effect."

The complaint alleges that in 1959 and 1960 plaintiff Union sought only modifications of the contract and no effort was made to terminate the agreement. The complaint, which was filed on March 28, 1961, continues:

"9. While the Agreement itself provides the procedure for making 'changes only' in Article I, section 2, no procedures are set forth in the Agreement as to the way in which the Agreement is terminated. The Plaintiff desires to terminate the Agreement as of the expiration of the current term, March 31, 1961.

"10. The Plaintiff in compliance with The Act, Section 8, subsection (d) served a written notice upon the Defendant of the Plaintiff's election to terminate on January 11, 1961, which constitutes a seasonable notice under The Act. * *

"11. In discussing the differences between the parties the Plaintiff has consistently maintained that it has a right to and will terminate the Agreement as of April 1, 1961. * * * The Defendant contends that the contract cannot be terminated other than by mutual consent of the parties; that the Plaintiff is con-

---

1. The agreement, as amended June 3, 1959 and June 1, 1960, was made a part of the complaint.

tractually bound in perpetuity to the Defendant and must continue to observe and work under the contract after the expiration date by virtue of an automatic renewal. The Defendant maintains that the Plaintiff must submit to conciliation or arbitration in accordance with Article I of Exhibit 'A' which provisions apply to 'changes only' and grievances or questions in dispute under an existing Agreement.

"12. The Defendant * * * has given the Plaintiff every indication that it intends to proceed to enforce its view of its rights should the Plaintiff fail to abide by the Agreement after its expiration and purported renewal.

"13. The Defendant, presuming that the Plaintiff is contractually bound in perpetuity has followed a consistent course of refusing to bargain in good faith and had predicated its negotiations upon the acceptance by the Plaintiff of a provision in the Agreement establishing and enforcing an 'Industry Fund' * * * the stated purposes of which are inimical to the interest of the Plaintiff. * * *.

"14. The members of the Defendant association have numerous contracts affecting commerce * * * [which require the] services of the members of the Plaintiff union for their execution. The Plaintiff union has assets amounting to three quarters of a million dollars which may be subjected to a money judgment under Section 301 of the Act, should it assume the responsibility of acting upon its own view of its rights and subsequently have its view adjudged to be erroneous."

The complaint states that plaintiff Union seeks declaratory relief to obviate the possibility of serious and lasting damage to it or to the members of the Association if they rely on their conflicting views of the respective rights and obligations.

The relief prayed includes a declaration that the Union had the right to terminate the agreement as of April 1, 1961, that it has complied with the requirements of sec. 8(d) of the Act, and that it "is not obliged to abide by the expired contract until such time as a new contract shall be entered into".

Defendant's motion to dismiss asserts (1) that this court is without jurisdiction to grant the relief requested in the complaint, and (2) that "the complaint in essence requests the Court to determine a matter involving the existence or non-existence of an unfair labor practice, to wit, refusal to bargain; that such determination has been committed by Law to the sole jurisdiction of the National Labor Relations Board in accordance with the Laws of the United States".[2]

(1) Sec. 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ In an appropriate case, that section confers jurisdiction on a district court to render a declaratory judgment as to rights created or existing under a collective bargaining agreement. Prudential Ins. Co. of America v. Insurance Agents' Intern. Union, S.D.N.Y., 169 F.Supp. 534; Employing Plasterer's Ass'n of Chicago v. Operative Plasterers and Cement Masons Intern. Ass'n, N.D. Ill., 172 F.Supp. 337; Pittsburgh Rys. Co. v. Amalgamated Assn, etc., W.D. Pa., 176 F.Supp. 16. See also Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 455-456, 77 S.Ct.

2. A third ground asserted in defendant's motion is that "the complaint fails to set forth an actual case or controversy", but in argument defendant properly conceded the existence of a "case or controversy".

494

912, 923, 1 L.Ed.2d 972; Council of Western Elec. Technical Employees-National v. Western Elec. Co., 2 Cir., 238 F. 2d 892.

■ (2) It is probably true that sec. 301 does not confer district court jurisdiction over unfair labor practices merely because they are prohibited by the collective bargaining agreement. See Textile Workers of America, CIO v. Arista Mills Co., 4 Cir., 193 F.2d 529, 533. "But even though the aggrieved incident or act can be said to be an unfair labor practice and within the jurisdiction of the Board, the courts are not thereby deprived of jurisdiction conferred by Section 301 to enforce the labor contract between the parties. There is no jurisdictional conflict, for the courts are concerned with the contract between the parties, the Board is concerned with the effectuation of the declared policies of the Act." United Steelworkers of America, etc. v. New Park Mining Co., 10 Cir., 273 F.2d 352, 358. See also Textile Workers of America, CIO v. Arista Mills Co., 193 F.2d at page 534; Plumbers & Steamfitters Union, Local No. 598 v. Dillion, 9 Cir., 255 F.2d 820, 823; Employing Plasterer's Ass'n of Chicago v. Operative Plasterers and Cement Masons Intern. Ass'n, 172 F.Supp. at page 342. The quoted statement is especially applicable where, as here, the issue which would be decided by the court is only one of the issues which would be before the Board in an unfair labor charge.

■ A major purpose of Congress in conferring jurisdiction on the district courts under sec. 301 was to promote industrial stabilization. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S. Ct. 1347, 4 L.Ed.2d 1409; Textile Workers Union of America v. Lincoln Mills, 353 U.S. at pages 453–455, 77 S.Ct. at pages 916–917.

■■ A district court may in the exercise of its discretion decline to grant a declaratory judgment. Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed.

291. But as Judge Dimock said in Prudential Ins. Co. of America v. Insurance Agents' Intern. Union, 169 F.Supp. at page 536: "It seems to me that courts in exercising their discretion in declaratory judgment cases ought to be particularly liberal where labor relations are involved. The most serious defect in the current trial-by-battle method of resolving disagreements between labor and management is that the method has no natural tendency to attain a reasonable result. The courts should welcome the opportunity to act in every case where, under the law, they can substitute a decision based on reason for one based upon the relative might of the contenders."

I conclude that this court has jurisdiction to grant the relief requested, and that the circumstances of the case call for the exercise of that jurisdiction.