376 F.2d 797
 EL PASO BUILDING & CONSTRUCTION TRADES COUNCIL, Appellant,
v.
EL PASO CHAPTER ASSOCIATED GENERAL CONTRACTORS OF AMERICA, Appellee.
EL PASO CHAPTER ASSOCIATED GENERAL CONTRACTORS OF AMERICA, Appellant,
v.
EL PASO BUILDING & CONSTRUCTION TRADES COUNCIL, Appellee.
 No. 22908.
 United States Court of Appeals Fifth Circuit.
 May 9, 1967.
 Rehearing Denied June 14, 1967.
 
 Malcolm McGregor, El Paso, Tex., Ernest Guinn, El Paso, Tex., Guinn & Guinn, El Paso, Tex., of counsel, for appellant-appellee.
 David R. Richards, Dallas, Tex., amicus curiae.
 J. F. Hulse, El Paso, Tex., Scott, Hulse, Marshall & Feuille, El Paso, Tex., of counsel, for appellee and cross-appellant.
 Before HUTCHESON, WISDOM and GODBOLD, Circuit Judges.
 HUTCHESON, Circuit Judge.
 
 
 1
 This appeal is from a declaratory judgment of the district court which held invalid a restrictive subcontracting clause contained in a collective bargaining contract between two parties in the construction industry. We agree that the dispute is ripe for declaratory judgment but reverse, holding that the subcontracting clause is valid.
 
 
 2
 The Union[1] and the Contractors[2] entered into the collective bargaining contract on April 1, 1961. They now disagree on the meaning and validity of Clause F, one of the clauses in that contract. It is found under that portion of the contract entitled "Article I, Coverage", and reads:
 
 
 3
 That if the Contractor, parties hereto shall subcontract construction work * * *, the terms of said Agreement shall extend to and bind such construction subcontract work, and provision shall be made in such subcontract for the observance by said Subcontractor of the terms of this Agreement. * * * This clause shall not be binding on either party or become effective (1) until a court of competent jurisdiction shall have adjudicated the validity thereof, (2) unless all employees covered by this Agreement will be assigned or allowed to work only on projects on which the engaged Subcontractors require like conditions in all their subcontracts and by all their Contractors, and (3) unless competitive bids of bondable and reliable Subcontractors, who are prepared to accept these provisions in a subcontract are available prior to any proposal by the Contractor.
 
 
 4
 In effect the parties agreed that in the event a general contractor subcontracted construction work, the terms of the prime collective bargaining contract between Union and Contractors would apply to the subcontracted work. Further emphasizing this agreement is a requirement that a general contractor take it upon himself to include in any such subcontract a provision binding the subcontractor to the terms of the prime contract. However, the subcontracting agreement is not enforceable as to either party until certain conditions have been met. One is that a court of competent jurisdiction shall have adjudged that the agreement relating to subcontracting is valid. Pursuant to this particular condition precedent, the Contractors refused to be bound by the restrictive subcontracting agreement until its validity was judicially determined. Thereafter the Union petitioned the district court for a declaratory judgment,[3] alleging the existence of a justiciable controversy and jurisdiction based on Sec. 301(a) of the Labor Management Relations Act, (LM RA), 29 U.S.C. Sec. 185(a).[4] The Union stated that the wage scale of its members would be jeopardized if the Contractors failed to comply with the agreement and that work stoppage and picketing would result unless its rights under the agreement were declared by the district court. The Contractors interposed three main objections to the petition: first, that Sec. 301 does not give the district court jurisdiction to render a declaratory judgment; second, that there is no controversy appropriate for determination; third, that in any event the agreement is invalid. The district court sitting without a jury concluded that it had jurisdiction but declared that the agreement is void and unenforceable. The Union appeals.
 
 
 5
 Preliminarily we deal with the threshold question whether Sec. 301 provides jurisdiction for a declaratory judgment concerning rights under a collective bargaining agreement. The Declaratory Judgment Act, 28 U.S.C. Secs. 2201, 2202, operates procedurally and merely enlarges the range of remedies available in cases over which the federal court already has jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Tennessee Coal, Iron & R. R. v. Muscoda Local 123, 137 F.2d 176, 179 (5th Cir. 1943), aff'd, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014 (1944); Gully v. Interstate Natural Gas Co., 82 F.2d 145, 149 (5th Cir.), cert. denied, 298 U.S. 688, 56 S.Ct. 958, 80 L.Ed. 1407 (1936). Thus jurisdiction depends on Sec. 301(a) which authorizes "[s]uits for violation of contracts between an employer and a labor organization * * *." The Contractors contend that this section does not apply with respect to a declaratory judgment wherein there is not alleged any violation of a contract. But ever since Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), it has been generally accepted that the scope of Sec. 301 is not restricted to suits for damages or specific enforcement. In that case the Supreme Court cited with approval legislative history, relating to language which is the substantial equivalent of the present Sec. 301, which expressly says that parties to a collective bargaining contract will be able to secure under Sec. 301 declarations of their rights under a contract by means of the declaratory judgment procedure.[5] We therefore conclude that the district court had jurisdiction over the declaratory judgment petition even in the absence of allegations of violations of the contract. See Allied Oil Workers Union v. Ethyl Corp., 341 F.2d 47, 49 (5th Cir. 1965); Black-Clawson, Inc. v. International Ass'n of Machinists, 313 F.2d 179, 181 (2d Cir. 1962).[6]
 
 
 6
 The next question is whether there is an "actual controversy" within 28 U.S.C. Sec. 2201. Although it is difficult to fashion a precise test for determining in every case whether the requisite controversy exists, Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Byers v. Byers, 254 F.2d 205, 209-210 (5th Cir. 1958), and the propriety of declaratory relief in a particular case therefore will depend to some extent upon a judicial sense of its fitness, it is safe to say that the dispute must have taken on final shape so that the court can see what legal issues it is deciding, the effect of the decision on the adversaries, and a useful purpose to be achieved in deciding them. Public Serv. Comm'n. of Utah v. Wycoff Co., Inc., 344 U.S. 237, 243-244, 73 S.Ct. 236, 97 L.Ed. 291 (1952). See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000 (1952). Keeping these guidelines and objectives in mind, we turn to the alleged controversy at hand.
 
 
 7
 The Contractors contend that the dispute is not ripe for determination because not every condition in Clause F, such as that concerning competitive bids of bondable subcontractors, has been met; and since the agreement is not presently binding or enforceable, it is argued that declaratory relief is premature. We think this argument employs a distorted interpretation of Clause F read as a whole. As we read Clause F, it is not necessary that the two other conditions be met before the issue of validity is passed upon. To the contrary, it appears from the face of the clause that the parties contemplated, and indeed intended, that a declaration upholding the agreement's validity would be the first step taken towards the agreement's application and enforceability. This conclusion is buttressed by the fact that the vitality of the agreement turns on the very declaration now sought. If the agreement is declared invalid and unenforceable, then the other conditions obviously become irrelevant. On the other hand, if the agreement is declared valid, the other conditions assume significance.
 
 
 8
 Our view of the instant case is similar to that taken in International Longshoremen's Ass'n v. Seatrain Lines, Inc., 326 F.2d 916 (2d Cir. 1964). In order to resolve a dispute arising during collective bargaining, the union and employer entered into an agreement akin to the one under consideration; they stipulated that certain funds of money would be put in escrow pending a determination by a federal court of the legality of such payments by the employer to the union. The fact that the dispute was a friendly one in the sense that the parties had agreed to submit it to the courts, as in the instant case, was not considered objectionable. Noting that a determination of the union's right to secure the payment it claimed would resolve the controversy, the Second Circuit proceeded to render a declaratory judgment. Accord, Mechanical Contractors Ass'n v. Local Union 420, 265 F.2d 607 (3rd Cir. 1959); International Union of Elec. Workers v. ITT Fed. Laboratories, 232 F.Supp. 873, 876 (D.N.J.1964).
 
 
 9
 The dispute here has taken final shape so that the contested issue of validity is clear. A declaration at this time will serve the desirable purposes of minimizing the danger of avoidable loss and of expediting the ascertainment of uncertain rights. See 3 Barron & Holtzoff, Federal Practice and Procedure, Sec. 1262, 273-275. We therefore turn to the merits.
 
 
 10
 Once the merits are reached, it is clear that the judgment must be reversed. The district judge, without assigning any reasons, held that the clause is invalid. We can only assume that he did so without taking note of the proviso to Sec. 8(e),[7] LMRA, which validates a clause of this kind where the union and employer are in the construction industry, as the parties here are. The application and validating effect of Sec. 8(e) upon agreements of this kind, which are judicially enforceable, were fully set forth in Local 48 of Sheet Metal Workers Int'l Ass'n v. Hardy Corp., 332 F.2d 682 (5th Cir. 1964),[8] and need not be further discussed. Relying upon Hardy, we hold that the agreement here is valid, and the judgment accordingly is reversed.
 
 
 
 Notes:
 
 
 [1]
 El Paso Building and Construction Trades Council
 
 
 [2]
 El Paso Chapter Associated General Contractors
 
 
 [3]
 28 U.S.C. Sec. 2201 provides: "In a case of actual controversy within its jurisdiction * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."
 
 
 [4]
 "Suits for violation of contracts between an employer and a labor organization * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."
 5. * * * the section dealing with equal responsibility under collective bargaining contracts in strike actions and proceedings in district courts contemplates not only the ordinary lawsuits for damages but also such other remedial proceedings, both legal and equitable, as might be appropriate in the circumstances; in other words, proceedings could, for example, be brought by the employers, the labor organizations, or interested individual employees under the Declaratory Judgment Act in order to secure declarations from the Court of legal rights under the contract.
 353 U.S. at 455-456, 77 S.Ct. at 917. (Emphasis added.)
 
 
 [6]
 See also International Bhd. of Elec. Workers v. Maryland Chapter, National Elec. Contractors Ass'n, Inc., 194 F.Supp. 491, 493 (D.Md.1961); Portland Web Pressmen's Union v. Oregonian Pub. Co., 188 F.Supp. 859, 864 (D.Or.1960), aff'd 286 F.2d 4 (9th Cir. 1960), cert. denied, 366 U.S. 912, 81 S.Ct. 1086, 6 L.Ed.2d 237 (1961); Employing Plasterer's Int'l Ass'n, 172 F.Supp. 337, 340 (N.D.Ill. 1959); Prudential Ins. Co. v. Insurance Agents' Int'l Union, 169 F.Supp. 534, 536 (S.D.N.Y.1959); New Bedford Defense Products Div. v. Local 113, UAW, 160 F.Supp. 103, 109, 258 F.2d 522 (1st Cir. 1958). Compare Ferguson-Steere Motor Co. v. International Brotherhood Teamsters, 223 F.2d 842 (5th Cir. 1955) which followed Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), overruled in Smith v. Evening News Ass'n, 371 U.S. 195, 199, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)
 
 
 [7]
 29 U.S.C. Sec. 158(e) states:
 It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void; Provided, That nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction * * * of a building, structure or other work. (Emphasis added)
 
 
 [8]
 Accord, Orange Belt District Council of Painters v. NLRB, 328 F.2d 534, 537 (D.C.Cir. 1964); Building and Constr. Trades Council v. NLRB, 328 F.2d 540 (D.C.Cir. 1964); Alpert v. Excavating & Bldg. Material etc. Local 379, Teamsters Union, 184 F.Supp. 558, 561 (D.Mass. 1960)