**UNITED STATES of America, Plaintiff,**

v.

**Fred W. VOGES, Voges Manufacturing Company, Inc., Radar Holding Corporation, et al., Defendants.**

**Civ. A. No. 13927.**

United States District Court
E. D. New York.

Aug. 13, 1954.

Butler, Bennett & Fitzpatrick, New York City, for Charles W. Parker, moving party. Bernard H. Fitzpatrick, John F. Butler, New York City, of counsel.

Joseph Jaspan, Brooklyn, N. Y., for receiver.

BRUCHHAUSEN, District Judge.

This is an action by Charles W. Parker against one Nathan Borock, a receiver in possession of the Voges Manufacturing Company, Inc., to compel the said receiver to enter into an arbitration.

Although various questions are raised, there is one crucial point. The question of law may be stated as follows:

"In a situation where there is a collective bargaining agreement between a company and a union with respect to all the terms of employment including the procedures for arbitration, may an individual employee in his individual capacity circumvent the union's refusal to arbitrate his dispute with the company in the absence of any showing of wrong conduct on the part of the union?"

In other words, is the individual employee a third party beneficiary? For the reasons hereinafter set forth, this Court answers these questions in the negative.

The facts are as follows: Charles W. Parker was "laid off" because of what appears to have been a work shortage. Thereafter, it is alleged that he participated in activities which were believed to be detrimental to the interests of the company, and he was discharged for cause. Pursuant to paragraph XXII of the contract a grievance hearing was held and the discharge was upheld. Article XXII of the contract, between the Company and the Union, reads as follows:

"If any difference shall arise between the Company and any employee or employees as to the application of any of the provisions of this Agreement, or if there be any complaint or grievance by any employee or by the Company with respect thereto, an earnest effort shall be made to adjust such difference, complaint or grievance by negotiations under the following procedure:

"(a) Between the employee, the Shop Steward and the foreman, or if such grievance be not adjusted within two working days:

"(b) Between the employee, a member of the grievance committee and the Shop Steward and the Plant Superintendent of the Company, or if the grievance be not adjusted within two working days:

"(c) Between the employee, the Shop Steward, the Grievance Committee and a representative of the Union and a representative of the

Company, or if the grievance be not settled within ten working days thereafter, by submitting the same to arbitration as provided herein.

"(d) Within fifteen (15) days after Subdivision (c) of this Article is exhausted, by submitting a written request to the Executive Secretary of the New York State Mediation Board for appointment in writing of an arbitrator to hear and determine the dispute. The party submitting such request shall simultaneously send a copy thereof by registered mail to the other party. The decision or award of the arbitrator shall be in writing and shall be final and conclusive upon the parties to this Agreement. The fees and expenses of the arbitrator shall be borne equally by the parties."

It is alleged that a demand for arbitration was made upon the American Arbitration Association and that such demand was late within the meaning of the contract (that point and its legal consequences is of no import since this Court holds that the employee had no standing to make the demand). A request for arbitration was also sent by Parker to the Union, and was denied by letter dated June 15, 1954, upon the ground that the Union believed there were insufficient grounds. Parker now moves in his individual capacity to compel arbitration. The preamble and Article I of the said contract read as follows:

"This Agreement entered into on this 24th day of November 1952, by and between the Voges Manufacturing Co., Inc., (hereinafter referred to as the 'Company') located at 103–11 98th Street, Ozone Park, L. I., N. Y., and District #15 of the International Association of Machinists, A.F. of L., located at 439–441 Fourth Avenue, New York, N. Y., (hereinafter referred to as the 'Union').

"*Article I Recognition*

"The Company recognizes the Union as the sole and exclusive bar-

gaining agency for the purposes of bargaining in respect to rates of pay, wages, hours of employment and all other conditions pertaining to employment of all of the employees in the bargaining unit hereinafter set forth."

It is thus apparent that the parties to the contract are the Company and the Union. It is equally clear that the sole bargaining unit, *of all the employees,* is the Union. It is true that the preamble states that the parties shall be referred to as the "Company" and the "Union". However, they are referred to as "parties" in many parts of the contract. Not only is the word "parties" used in Article XXII, sections 2 and 5 as set out, supra, but in other parts thereof. Article XXX, involving termination of the contract, mentions "parties". The "whereas" clause in the supplemental contract dated November 13, 1953, reads:

"Whereas, there was in effect between the *parties* an agreement dated November 24, 1952; and

"Whereas, collective bargaining has taken place between the *parties* hereto."

Section 11(d) amending Article XXII is particularly clear with respect to the relationship of the word parties and the contract. This Section reads as follows:

"11(d) Within fifteen (15) days after Subdivision (c) of this Article is exhausted, by submitting a written request to the Executive Secretary of the American Arbitration Association for appointment in writing of an arbitrator to hear and determine the dispute. *The party submitting* such request shall simultaneously send a copy thereof by registered mail to the *other party.* The decision or award of the arbitrator shall be in writing and shall be final and conclusive upon the *parties to this Agreement.* The fees and expenses of the arbitrator shall be borne equally by *the parties.*"

 The only conceivable ground for the claimant's position is that Ar-

ticle XXII of the contract reads that "If any difference shall arise between the Company and any employee or employees" then the grievance procedure shall apply. The use of those words, rather than the words "If any difference shall arise between the Company and the Union" do not in and of themselves create a right flowing to the individual qua individual with respect to the Company. No such intent arises from this alone. He is no more than an incidental beneficiary. The whole tenor of Article XXII and Section 11(d) of the supplemental contract and the contract as a whole shows that the grievance proceduce is set up between the Company and the sole bargaining agent, the Union, the parties to be bound, and the only parties intended to have the power to request arbitration. Naturally it is the employee or employees who may have a difference with the Company. But it is the employees in their union cloak and capacity only who may avail themselves of the "Union function", which is the possibility of an eventual arbitration. It is the Union that is the sole bargaining agent for *all* of the employees by contract, and by clear coverage in Article I, supra. The situation might be different if the Union committed a breach of its duty to the members, which is not alleged and thus arbitrarily deprived the individual of the possibility of arbitration. Whether or not any remedy will be against the receiver who may be sued without the consent of the Court under 28 U.S.C.A. § 959 need not be determined here. The clearest and best reasoned authority on the subject was written by Mr. Justice Moss of the New York State Supreme Court, Kings County, in Bianculli v. Brooklyn Union Gas Co., Sup., 115 N.Y.S.2d 715, 717. It is true that the Bianculli case is more sharply defined than the one at bar, but careful analysis leads to the same conclusion. In that case the "purpose" clause reads as follows:

"' * * * to establish an orderly collective bargaining procedure between the Company and the Un-

ion (not between the "Company" and the "Employees") and to secure a prompt and fair disposition of grievances.'"

In the case at bar Article XXII reads that "if any difference shall arise between the Company and any employee or employees" grievance procedure and arbitration shall be available. That, however, merely indicates that the "Union Function" is available to the "Union Member" under the aegis of the Union exercising the collective function. The Union, a party, has the right to demand arbitration, with *"the parties to this agreement."* It is the Union and the Company that are bound by the arbitrators decision. *The procedure is set up between the Union and the Company* with the power to proceed to arbitration in the hands of each.

In the Bianculli case, it was clear that only the Union had the right of challenge. In the case at bar, no contrary indication can be gleaned from the crucial language of Article XXII and Section 11(d) which clearly point to the "party" as the "enforcing agency." The contract in the case at bar may be searched for an exception to the general rule that parties alone may enforce its provisions. None can be found. It is patently clear that the "enforcement" of the arbitration is purely a Union right. The contract as a whole, as well as these provisions, all indicate that the arbitration is between the Union and the Company *concerning* an employee. The long and short of it is that the "employee's difference with the Company" is or is not a union "cause of action" which it may or may not advance to ultimate arbitration. If the Union decides it has no "cause of action", the "employee's difference" is dissipated by the decision of the sole bargaining agent, and he is bound thereby. As was said in the Bianculli case, Sup., 115 N.Y.S. 2d 715, 718:

"The philosophy of the Union in retaining control over disputes and of the Company in requiring the same is sound. A contrary proce-

dure which would allow each individual employee to overrule and supersede the governing body of a Union would create a condition of disorder and instability which would be disastrous to labor as well as industry."

The motion is in all respects denied.