The **BLACK–CLAWSON COMPANY, INC., PAPER MACHINE DIVISION, Plaintiff-Appellee,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS LODGE 355, DISTRICT 137, Defendant,**

and

**Theodore A. Best, Defendant-Appellant.**

No. 70, Docket 27624.

United States Court of Appeals Second Circuit.

Argued Nov. 8, 1962.

Decided Dec. 22, 1962.

Carroll & Amyot, Saratoga Springs, N. Y. (James F. Carroll, Saratoga Springs, N. Y., and Robert P. Best, Gloversville, N. Y., of counsel), for appellant.

J. Mack Swigert, Cincinnati, Ohio (Taft, Stettinius & Hollister and Frank H. Stewart, Cincinnati, Ohio, and Dunk, Conboy, McKay & Bachman, and Carl O. Bachman and Robert J. Maloney, Watertown, N. Y., of counsel), for appellee.

Before MEDINA, SMITH and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

The plaintiff, Black-Clawson Company, Inc., (hereafter referred to as Black-Clawson or the employer) is engaged in the manufacture of machinery for the paper-making industry in various states. In July 1959, Black-Clawson entered into a collective bargaining agreement with the International Association of Machinists, Lodge 355, District 137 (hereafter referred to as the Union), which served as the exclusive bargaining representative for certain production and maintenance employees in the plaintiff's Watertown, New York plant. One member of the unit represented by the Union was Theodore A. Best who, along with the Union, was joined as a defendant in the court below in a suit for a declaratory judgment brought by Black-Clawson. Best was an employee of the company from June 4, 1951 until May 8, 1961, when his employment was terminated by a written notice informing him that the cause for discharge was his failure to return to work at the end of a protracted period of sick leave. The collective bargaining agreement between Black-Clawson and the Union established a four-step grievance procedure, terminating in arbitration, for resolution of employee grievances. Best, purporting to have complied with the preliminary steps of the grievance procedure, demanded that the employer go to arbitration in order to remedy what Best contended was a wrongful discharge in violation of the collective agreement.

Black-Clawson, invoking section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, commenced an action in the United States District Court for the Northern District of New York for a declaration that this dispute was not arbitrable under the terms of the collective bargaining agreement, joining the Union and Best as codefendants. The defendants, in separate answers, requested a dismissal of the complaint as well as affirmative declaratory relief and an order compelling the plaintiff to submit to arbitration. On cross-motions for summary judgment, the District Judge held that the defendants were to be restrained from taking any action, based upon the agreement, to compel the arbitration of Best's grievance. He held that no such right was conferred upon an individual employee by the contract or by the applicable rules of law; he also held that neither Best nor the Union had complied with the four-step procedure set down in the agreement, which barred them from compelling the employer to arbitrate. From this judgment, only Best appeals.

We affirm the judgment of the District Court.

## I.

■ As a preliminary matter, we hold that an action for declaratory judgment may be brought under the terms of section 301(a) of the Labor Management Relations Act[1] as implemented by the Federal Declaratory Judgment Act.[2] Some courts have held that the language

of section 301(a), "suits for violations of contracts," does not countenance an action by a party to a collective bargaining agreement who asserts that he has in fact adhered to the terms of the agreement and who fails to allege its "violation" by the opposing party. See Mengel Co. v. Nashville Paper Products and Specialty Workers Union, 221 F.2d 644 (6th Cir. 1955) (with Circuit Judge, now Justice, Stewart dissenting); Hall v. Sperry Gyroscope Co. Division of Sperry Rand Corp., 183 F.Supp. 891 (S.D.N.Y. 1960); Wamsutta Mills v. Pollock, 180 F.Supp. 826 (S.D.N.Y.1959). By far the great majority of courts, however, read section 301(a) more expansively and permit suits for a declaration of rights in circumstances such as those in the case before us. See Fried v. Glenn Elec. Heater Corp., 198 F.Supp. 248, 254–255 (D.N.J.1961); Local Union 28, Int'l Bhd. of Elec. Workers v. Maryland Chapter, Nat'l Elec. Contractors Ass'n, Inc., 194 F.Supp. 491, 493 (D.Md.1961); Weyerhaeuser Co., Shipping Container Division v. International Brotherhood of Pulp etc., Workers, 190 F.Supp. 196 (D.Me. 1960); Employing Plasterer's Ass'n v. Operative Plasterers, etc., Ass'n, 172 F. Supp. 337, 340 (N.D.Ill.1959); Prudential Ins. Co. of America v. Insurance Agents' Intern. Union, 169 F.Supp. 534 (S.D.N.Y.1959); Armstrong-Norwalk Rubber Corp. v. Local Union 283, United Rubber, etc., Workers, 167 F.Supp. 817, 818 (D.Conn.1958), appeal dismissed, 269 F.2d 618 (2d Cir. 1959); Studio Carpenters Local Union No. 946 v. Loew's Inc., 84 F.Supp. 675 (S.D.Cal.1949).[3]

1. "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2. "In a case of actual controversy within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

3. Several cases in this Circuit and other Circuits, while not expressly passing on the issue presented here, have countenanced actions brought under section 301 framed as requests for declaratory relief. See Local 33, Int'l Hod Carriers Bldg., etc., Union v. Mason Tenders District Council, 291 F.2d 496 (2d Cir. 1961) (Judges Clark, Medina and Friendly); Council of Western Elec. Technical Employees-National v. Western Elec. Co.,

We find nothing in the history of section 301(a) which indicates an intention to restrict that section to suits for damages or specific enforcement. In fact, the one item of relevant material in the legislative history points quite clearly to the opposite conclusion and supports the result we reach today. In a discussion on the floor of the House concerning the effect of section 302 of the House bill, predecessor to the present section 301, Congressman Hartley, the sponsor of the act, adopted this construction:

"*  *  *  [S]ection 302  *  *  * contemplates not only the ordinary lawsuits for damages but also such other remedial proceedings, both legal and equitable, as might be appropriate in the circumstances; in other words, proceedings could, for example, be brought by the employers, the labor organizations, or interested individual employees under the Declaratory Judgments Act in order to secure declarations from the Court of legal rights under the contract." 93 Cong.Rec. 3656–57 (1947).

We do not doubt that if the codefendants here had desired to press Best's grievance to arbitration they could have brought an action under section 301(a) to compel the company to do so, in the event Black-Clawson had refused to go to arbitration. See Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); cf. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed. 2d 246 (1962). But, as it would in such an action, the instant proceeding turns upon a construction of the collective bargaining agreement and a determination whether the employer's obligation to arbitrate Best's grievance was called into play by the terms of the agreement and by the Union's and Best's

conduct thereunder. The issues of fact and of law to be determined by the court are the same, whether the complaint alleges a violation of the contract and requests arbitration or whether it alleges compliance with the contract and requests protection by declaratory judgment against improper demands for arbitration.

Here, the Union and Best purported to take all steps necessary to precipitate the duty to arbitrate; in short, there was an "actual controversy" within the meaning of the Declaratory Judgment Act. To hold that the controversy cannot be resolved in an action brought by any of the parties empowered to do so under section 301(a) would comport neither with the streamlined procedural policy embodied in the declaratory judgment proceeding nor with the strong concern embodied in section 301 for the enforcement of collective bargaining agreements and the peaceful resolution of contract disputes between labor and management. Cf. Textile Workers Union of America v. Lincoln Mills of Ala., supra.

II.

The heart of the controversy presented on appeal is the interpretation of those sections of the collective bargaining agreement between Black-Clawson and the Union which deal with the resolution of grievances. Article XX, entitled "Grievance Procedures," defines a grievance as "any dispute between the Company and the Union, or between the Company and any employee," and goes on to establish a four-step procedure for the solution of such disputes. Step one provides that the "grievance shall be taken up orally by the aggrieved employee and a member of the Union Committee if he so desires with the Department Foreman within three (3) days after the grievance becomes known by the aggrieved employee or by the Shop Committee." Within two working days, the foreman must give his answer to the grievance, and if no settlement is reached, the griev-

238 F.2d 892 (2d Cir. 1956) (Judges Hand, Medina and Hincks); International Union, United Auto., etc., Workers v. Webster Elec. Co., 299 F.2d 195

(7th Cir. 1962); American Federation of Labor v. Western Union Tel. Co., 179 F.2d 535 (6th Cir. 1950).

ance is to be reduced to written form, upon which the foreman will record his answer. Step two is in the hands of the Shop Committee which, within two days, may present the written grievance to the Plant Superintendent, who must meet with the Committee and give his written answer within four working days. If no settlement of the grievance is achieved at this stage, mounting to step three is again in the hands of the Shop Committee, which may, within four days, request a meeting with the Director of Personnel, whose answer must be forthcoming before ten days pass. Step four of the grievance procedure is described as follows:

> "In the event the grievance or dispute is not settled in a manner satisfactory to the grieving party then the grieving party may submit such grievance or dispute to arbitration. Whomever requests arbitration shall serve notice to the other party and submit letter of notification of intent to arbitrate to the Federal Mediation and Conciliation Service within fifteen (15) days after receiving the written answer from the Director of Personnel or his designee."

After Best's employment was terminated on May 8, 1961, both he and the Union purported to comply with the first three steps of the grievance procedure. Judge Brennan, in the court below, held that they had in fact failed to comply with the letter of the collective bargaining agreement. In any event, on July 5, 1961, Best mailed a letter to Black-Clawson's Director of Personnel, invoking step four of the grievance procedure and requesting arbitration. The employer indicated on several occasions that it did not consider the matter to be arbitrable.

Best contends that not only is the issue arbitrable but the terms of the contract are such as to permit him personally to request arbitration and to compel it by an action in a court of law. We disagree, and hold that the terms of Article XX of the collective bargaining agreement give no standing to Best, as an individual employee, to compel arbitration.

It matters not that "grievance" is defined in one sense as a "dispute * * between the Company and any employee"; that is merely a definition in the contract and does not in any way govern the proper procedure for settling the grievance. It is clear that the rights of the individual employee with regard to the grievance procedure are limited to step one, confrontation with the Department Foreman. From that point on, the right to progress from one step to the next is vested in the Union and ultimately in the employer as well. Best contends that step four permits the "grieving party" to invoke arbitration, and that this clearly refers to the individual employee. But by doing no more than placing this phrase in its context, we are drawn ineluctably to the conclusion that "party" in step four means what it means throughout the entire collective bargaining agreement—either Black-Clawson or the Union. Step four itself requires that notice of intention to submit to arbitration be given "to the other party." "Each party" must bear its respective expenses during arbitration. Article XX also provides that "either party to this agreement shall be permitted to call employee witnesses" in administering the grievance procedure. The words "either party" recur too frequently in Article XX to permit of any construction other than that we here adopt. Our conclusion is reinforced by the fact that the drafters of the collective bargaining agreement were apparently well aware of the difference between a "grieving party" and an "aggrieved employee," for the latter phrase was used unequivocally when assigning rights during the course of the grievance procedure to individual employees.[4]

---

4. "Step 1. The dispute or grievance shall be taken up orally by the aggrieved employee and a member of the Union Committee if he so desires * * *."

"Section 3. The Company will pay the members of the Shop Committee and aggrieved employees at their regular hourly rate, for time spent in processing grievances * * *."

The collective agreement we have before us is typical in language and structure of many such agreements in the field of labor-management relations. Similar language in an agreement almost identical in form to the one before us caused this Court to conclude only recently:

"The right to arbitrate under a collective agreement is not ordinarily a right incident to the employer-employee relationship, but one which is incident to the relationship between employer and union. Under the collective agreement between the parties, it was the union which had the right to take grievances to arbitration, not the individual employees. See Black-Clawson Co. v. International Ass'n of Machinists, 212 F. Supp. 818 (N.D.N.Y.1962) * * *. The wording of the grievance clause as a whole clearly indicates that only the union or the employer can demand arbitration." Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181 (2d Cir., 1962).

The Supreme Court's recent holding in Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) convinces us that henceforth, actions between employees and employers brought under section 301(a) will be governed by "federal law, which the courts must fashion from the policy of our national labor laws," Textile Workers of America v. Lincoln Mills of Ala., 353 U. S. at 456, 77 S.Ct. at 917. Lincoln Mills further held that "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy." 353 U.S. at 457, 77 S.Ct. at 918. We conclude that the terms of the grievance procedure in the collective bargaining agreement before us give the employee Best no right to compel Black-Clawson to submit to arbitration, and that this conclusion must be reached by applying federal law and by resorting to reasoned state precedent for guidance. See Ostrofsky v. United Steelworkers, etc., 171

F.Supp. 782 (D.Md.1959), aff'd, 273 F.2d 614 (4th Cir.), cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732 (1960); United States v. Voges, 124 F.Supp. 543 (E.D.N.Y.1954); Parker v. Borock, 5 N.Y.2d 156, 162, 182 N.Y.S.2d 577, 581, 156 N.E.2d 297, 300 (1959) (concurring opinion of Fuld, J.); Bianculli v. Brooklyn Union Gas Co., 14 Misc.2d 297, 115 N.Y.S.2d 715 (Sup.Ct.1952); Falsetti v. Local Union No. 2026, United Mine Workers of America, 400 Pa. 145, 161 A.2d 882 (1960).

### III.

Appellant Best also contends that his right to compel arbitration is guaranteed by section 9(a) of the Labor Management Relations Act, 29 U.S.C. § 159(a)—which authorizes the presentation and adjustment of grievances by the individual employee independently of the bargaining representative—and by the terms of the grievance procedure of the collective bargaining agreement—which adopt section 9(a) of the act and provide that any such individual adjustment be processed in accordance with the terms of the contract. We disagree and hold that section 9(a) does not confer upon an individual grievant the power, enforceable in a court of law, to compel the employer to arbitrate his grievance.

That section reads as follows:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining

contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment."

Best seizes upon the first proviso to the section, which affords to the employee "the right at any time to present grievances" to the employer and to have them adjusted. Despite Congress' use of the word "right", which seems to import an indefeasible right mirrored in a duty on the part of the employer, we are convinced that the proviso was designed merely to confer upon the employee the privilege to approach his employer on personal grievances when his union reacts with hostility or apathy. Prior to the adoption of this proviso in section 9(a), the employer had cause to fear that his processing of an individual's grievance without consulting the bargaining representative would be an unfair labor practice; section 9(a) made the union the exclusive representative of the employees in the bargaining unit, and section 8(a) (5) made a refusal to bargain with the exclusive representative an unfair labor practice. The proviso was apparently designed to safeguard from charges of violation of the act the employer who voluntarily processed employee grievances at the behest of the individual employee, and to reduce what many had deemed the unlimited power of the union to control the processing of grievances.

The few elucidating passages in the legislative history of section 9(a) give support to the construction here adopted. Thus, the Report of the House Committee on Education and Labor sets out the function of the section:

"The bill further adds to the freedom of workers by *permitting* them not only to present grievances to their employers, as the old Board

heretofore has permitted them to do, but also to settle the grievances when doing so does not violate the terms of a collective-bargaining agreement, which the Board has not allowed.". H.Rep.No.245, 80th Cong., 1st Sess. 7 (1947). (Emphasis added).

When the bill emanated from the Conference Committee, that Committee reported that

"Both the House bill and the Senate amendment amended section 9 (a) of the existing law to specifically *authorize* employers to settle grievances presented by individual employees or groups of employees, so long as the settlement is not inconsistent with any collective bargaining contract in effect." H.Rep.No. 510, 80th Cong., 1st Sess. 46 (1947), U.S.Code Congressional Service 1947, p. 1152. (Emphasis added).

It seems clear, therefore, that rather than conferring an indefeasible right upon the individual employee to compel compliance with the grievance procedure up to and including any arbitration provision, section 9(a) merely set up a buffer between the employee and his union, "permitting" the employee to take his grievances to the employer, and "authorizing" the employer to hear and adjust them without running afoul of the "exclusive bargaining representative" language of the operative portion of section 9(a).[5] This construction also best comports with the structure of the section. "The office of a proviso is seldom to create substantive rights and obligations; it carves exceptions out of what goes before." Cox, "Rights Under a Labor Agreement." 69 Harv.L.Rev. 601, 624 (1956).

As applied to the case before us, section 9(a) of the Labor Management Relations Act, and its adoption by Black-Clawson and the Union in their collective

---

5. See also 93 Cong.Rec. 4904 (1947): "In further protection of the rights of employees and to insulate employers from possible charges of unfair bargaining practices, we have * * * clarified the right of individuals or groups to settle and adjust grievances under section 9(a) of the act whenever the bargaining agent, although given the opportunity to participate, nonetheless does not indicate a desire to take part in the adjustment."

bargaining agreement, assured Best the privilege of presenting his grievance to the employer even without the cooperation of the Union, and with the consent of Black-Clawson to have those grievances adjusted, so long as the adjustment was not inconsistent with the terms of the collective agreement. See Ostrofsky v. United Steelworkers, etc., 171 F.Supp. 782, 791 (D.Md.1959), aff'd, 273 F.2d 614 (4th Cir.), cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732 (1960); Arsenault v. General Elec. Co., 147 Conn. 130, 157 A.2d 918 (1960). See also General Cable Corp., 20 Lab. Arb. 443 (Hays, 1953).[6] Best is therefore without power to compel Black-Clawson to arbitrate the grievance stemming from his accusation of wrongful discharge. The Union is the sole agency empowered to do so by the statute and by the terms of the contract before us.

Our conclusion is dictated not merely by the terms of the collective bargaining agreement and by the language, structure, and history of section 9(a), but also by what we consider to be a sound view of labor-management relations. The union represents the employees for the purposes of negotiating and enforcing the terms of the collective bargaining agreement. This is the modern means of bringing about industrial peace and channeling the resolution of intra-plant disputes. Chaos would result if every disenchanted employee, every disturbed employee, and every employee who harbored a dislike for his employer, could harass both the union and the employer by processing grievances through the various steps of the grievance procedure and ul-

timately by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union. See Stewart v. Day & Zimmermann, Inc., 294 F.2d 7, 11 n. 6 (5th Cir. 1961); Ostrofsky v. United Steelworkers, supra; United States v. Voges, supra; Bianculli v. Brooklyn Union Gas Co., supra. "A union's right to screen grievances and to press only those it concludes should be pressed is a valuable right * * *," Ostrofsky v. United Steelworkers, 171 F.Supp. at 790, and inures to the benefit of all of the employees.

Our conclusion is in complete accord with the latest utterances of this Court:

> "[T]he right to arbitrate is in no sense an incident or a 'condition' of the employer-employee relationship as such, but depends, in exactly the same degree as does the union's right to arbitrate, on the existence of an agreement to arbitrate. In the absence of such an agreement no employee has the right to compel his employer to arbitrate any matter whatsoever." Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181 (2d Cir., Dec. 10, 1962).

If employer and union deem it consonant with the efficient handling of labor disputes to repose power in the individual employee to compel the employer to arbitrate grievances, then they may do so, by incorporating such a provision in clear language in the collective bargaining agreement. They have not done so here.

For these reasons, we affirm the judgment of the District Court.

---

6. "Although the situation with respect to presentation of grievances by employees is referred to in Section 9(a) as a 'right,' the Act itself nowhere provides protection for this right. The language appears to be used in such a way as to create an exception to the employer's duty to bargain exclusively with the majority representatives. The act does not make it an unfair labor practice for the employer to refuse to entertain grievances from individual employees (Adm. Ruling, Gen. Council, Case No. 317 (1952), 30 L.R.R.M. 1103; Case No. 418 (1952), 31 L.R.R.M. 1039), and there seems to be no other method of enforcement available either in the Act or otherwise." 20 Lab.Arb. at 445.

See Gen. Counsel's Adm. Dec. No. 317, 30 L.R.R.M. 1103 (1952): "An individual employee is merely granted 'permission' to present a grievance. An employer is not 'required' to meet with a minority group of employees to adjust or discuss a grievance."