Fuld, J.
The F. S. Savannah was built by the Government as the first of a number of nuclear-powered merchant vessels which it planned to construct. The Federal Maritime Administration appointed States Marine Lines, the petitioner herein, as general agent of the United States .to operate the ship. Its crew, like the crew of any other merchant vessel capable of carrying passengers, consisted of several classes of employees. We are concerned only with the Masters and Licensed Deck Officers who are represented by the International Organization of Masters, Mates and Pilots (hereafter designated MMP) and with the Licensed Engineering Officers, represented by the Fational Marine Engineers Beneficial Association (hereafter referred to as MEBA). The former are officers in command of the vessel, responsible for its safe navigation at sea and its security in port; in addition, they supervise cargo operations and the maintenance of those portions of the ship used for cargo and navigation purposes.
In July of 1961, which was before the Savannah actually entered service, the petitioner States Marine entered into a collective bargaining agreement with MMP which covered employees on the petitioner’s other ships as well as the Savannah. That agreement was to be in effect from June 16, 1961 to June 15, 1965. The petitioner also had a separate bargaining agreement with MEBA which was to expire in June of 1964. The current collective bargaining agreement with *210 MMP contained a provision, and it had been in other agreements between the parties for at least seven years, that
“ The minimum * * # monthly wage rate for Masters on diesel-driven vessels shall always be $25.00 higher than the rate for Chief Engineers on diesel-driven vessels of the same power tonnage class and number of engines ’ ’,
except, the provision continued, in no instance was the minimum rate for masters to be below $1,206.72.
Those who negotiated the collective bargaining agreement had in mind the fact that the development of nuclear-powered vessels such as the Savannah might create problems which would require special consideration. It was realized, for instance, that both the deck officers and the engineers would be required to assume additional responsibilities and duties and to undertake additional training, thereby rendering altered wage-rates appropriate. Accordingly, the collective bargaining agreement between the petitioner States Marine and MMP provided in paragraph (g) of section 9 that, when vessels with a new type power plant “ are put into operation,” the union
‘ ‘ shall have the right to raise the issue of the wages to be paid to the licensed deck officers aboard said vessels and in the event of disagreement in negotiations said issue shall be submitted to arbitration in accordance with the provisions of Section 3.”
The collective bargaining agreement between States Marine and MEBA contained a similar provision.
In August of 1962, some months after the Savannah had been launched, disagreement among the several labor organizations representing the personnel which comprised its crew resulted in a work stoppage. The operator of the vessel, States Marine, invoked the grievance and arbitration procedure provided for in its agreement with MMP. The parties were unable to agree upon the arbitrator. The Secretary of Labor of the United States, empowered by the agreement to designate the arbitrator in such an event, named Walter Qellhorn, a professor of law at Columbia University.
*211 Following extensive hearings, Professor Gellhorn handed down his opinion and award which, we note, encompassed issues in addition to that involving the wages to be paid to licensed deck officers aboard the Savannah. Concerning this latter issue, the arbitrator observed that, since the engineers’ wage scale had not yet been finally determined[1] and since the commodore or master — as he was interchangeably designated — is “ the general manager,” with “ over-all responsibility ”, he “ should be compensated in a manner leaving no doubt about his stature or his primacy. ’ ’ Hence, the arbitrator continued, ‘ ‘ a substantial differential should be preserved in the Commodore’s favor, no matter how high the final figure for the Chief Engineer.” He thereupon set the monthly wage scale of the commodore and the staff captain at a fixed dollar amount and, to carry out the wage differential idea, further provided that their compensation was, in any event, to be at least a specified amount higher than the salary to be paid to the chief engineer. The award, insofar as here pertinent, reads in this way:
“ 1. The basic monthly wage scale of the N.S. Savannah effective as of May 1, 1962, shall be as follows:
a) Commodore (or Master) • — $1500, or $200 more than the Chief Engineer’s basic monthly wage (whichever is greater);
b) Staff Captain — $1400, or $100 more than the Chief Engineer’s basic monthly wage (whichever is greater);
c) Chief Mate — $200 less than the Staff Captain’s basic monthly wage;
d) Second Mate and Third Mate — during the first three months of service aboard the N.S. Savannah, the rates for officers of equivalent ranks in Class A-l vessels; thereafter, the rates for officers of equivalent ranks in Class A-3 vessels, or ninety percent of the respective rates for Second and Third Assistant Engineers in the N.S. Savannah (whichever is greater).’’
States Marine moved to vacate the award. It urged that it is invalid because the arbitrator exceeded his powers (a) by *212 deciding an issue not submitted and (b) by attempting to bind MEBA which was not a party to the arbitration proceedings and because, in any event, it is not final and definite (Civ. Prac. Act, § 1462, subd. 4 [CPLR 7511, subd. (b), par. 1, cl. (iii)]). The court at Special Term denied the application and a divided Appellate Division affirmed.
The form of the award, with its wage differential, seems in this instance singularly appropriate but whether it is or is not is beside the point. Our function upon this appeal — indeed, the function of any court in a proceeding such as the present — is not to decide the appropriateness or the wisdom of the award or whether the judges of a court would have rendered the same award had they acted as arbitrators but, rather, to ascertain whether the arbitrator who did make the award exceeded his powers or so imperfectly executed them as to require its vacatur.[2]
When so viewed, the award is clearly valid and enforcible.
We consider first the petitioner’s contention that the arbitrator exceeded his powers by deciding an issue not submitted. It is difficult to envisage language more broad than that contained in the arbitration clause of the collective bargaining agreement. By empowering the arbitrator to determine ‘ ‘ the issue of the wages to be paid the licensed deck officers,” the agreement, far from imposing any restriction on the arbitrator, gave him authority to decide every aspect of the wage controversy. It certainly did not prevent him from using a wage differential formula, the very device employed for many years by the parties themselves in their own collective bargaining agreements in order to make certain that the master (or commodore) on diesel-driven vessels would receive higher compensation than the chief engineer.
*213 Even less persuasive is the petitioner’s further argument that the arbitrator exceeded his powers by attempting to bind MEBA which was not a party to the arbitration proceedings. The award does not in any sense control or affect anyone other than States Marine and MMP, both of whom were before the arbitrator. It does no more than provide that States Marine is to pay certain specified wages to the licensed deck officers on board the Savannah. It leaves completely for future fixation, either by the employer and MEBA or by arbitration, the amount of wages to be paid to the engineers. The arbitrator’s determination in this case is neither addressed nor directed to the engineers or their union and, while the compensation to be paid to the deck officers may be tied in with that paid to the engineers,that obviously does not bind the latter to any dollar amount or control them in their bargaining endeavors.
This brings us to the petitioner’s last point, that the award is not final and definite because the wage scale provided for could fluctuate “ with every change in the M.E.B.A. wages.”
By delegating to the arbitrator the power to provide a wage structure which they were unable to negotiate, the parties, broadly speaking, vested in the arbitrator the same power tó make a wage agreement that they themselves had and, of course, subject to the same limitations. If, therefore, the parties had made an agreement in which the wages were left to the will of one of them, or if such wages could not be readily ascertained by reference to -objective factors, the agreement would not be enforcible, and an arbitral award providing for such a wage structure would likewise be unenforcible. If, however, the parties provide “a practicable, objective method ” for determining the compensation to be paid, not leaving it to the future will of the parties themselves, “ there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract.” (1 Corbin, Contracts [1963], § 97, pp. 424-425; also, § 98, p. 433 et seq.)
By the same token, an award does not lack definiteness or finality if it prescribes a wage scale which is to fluctuate depending on some outside factor as long as that factor is itself fixed or readily determinable. (See Matter of Hunter [Proser], 298 N. Y. 828, affg. 274 App. Div. 311; Matter of Overseas Distrs. *214 Exch. [Benedict Bros. & Co.], 5 A D 2d 498, 499; see, also, 21 Carmody-Wait, New York Practice, pp. 545-546.) “ The fact that certain computations will have to be made week by week to carry the award into effect ”, the court declared in the Hunter case (274 App. Div. 311, 312, affd. 298 N. Y. 828, supra), “ does not render the award ineffective for the present or for the future. The formulae for the computations are so clear and specific that the determination of the amounts owing to the petitioner week by week is merely an accounting calculation.”
Here, too, the formula contained in the award is “so clear and specific ’ ’ that determination of the amount of wages to be paid to the commodore and the other deck officers involves nothing more than an arithmetical calculation. The parties could have provided — -as, indeed, they did for many years with respect to diesel-powered ships — for a wage scale under which the commodore was to receive a fixed salary or a stated amount above the chief engineer’s salary, whichever was the greater, and such an agreement would unquestionably have been enforcible: the compensation provided would have been definite and certain, consisting of the fixed amount specified or a sum based upon the amount paid to "the chief engineer. An award providing for the same sort of wage structure is likewise final and definite. All that the employer need do, as Justice Bergah pointed out in the course of his opinion for the Appellate Division, is ‘‘ merely look at another place on its own payroll record to compute the amount that it will pay the commodore in any month. We see nothing indefinite or incomplete about this ”.[3]
Nor does the award become indefinite or incomplete because of the possibility that at some future date an award pertaining to the engineers — for instance, that the chief engineer shall receive a higher wage than the commodore — may make its execution impossible. If such an eventuality were to come to pass, a dilemma would, it is true, be created. That dilemma, however, might just as well have occurred under the differential provision of the collective bargaining agreement itself and, quite obviously, such an agreement would not be regarded as *215 lacking in definiteness or completeness merely because some future event might render performance impossible. As with a contract, so with an award, impossibility of performance or even frustration may, in a proper case, excuse nonperformance. However, whatever our resolution of such a problem, if ever it should arise, it is clear that the contingency supposed neither deprives the award of finality nor destroys its validity.
In short, the arbitrator was privileged to provide for an automatic adjustment of the wages of the commodore and the other deck officers if the engineers’ wages were changed and, since no more than a simple arithmetical calculation will be needed to arrive at the amounts to which they will be entitled, the award meets every requirement of mutuality, finality and definiteness.
The order appealed from should be affirmed, with costs.

. As a matter of fact, the collective bargaining agreement with the engineers permitted their wages to be changed at least twice during the period for which the present award would be effective.

. Since the parties herein have not suggested that the present controversy is to be decided under Federal law — on the ground that it involves a contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in the Labor-Management Relations Act of 1947 (§ 301 [a] ; see Textile Workers v. Lincoln Mills, 353 U. S. 448; Teamsters Local v. Lucas Flour Co., 369 U. S. 95, 101 et seq.; Black-Clawson Co. v. International Assn. of Machinists, 313 F. 2d 179, 181-182 [2d Cir., 1962]) —we need say no more than that our decision would be the same whether Federal or State law governs.

. Indeed, to quote another sentence from the opinion, “ The employer would have no more trouble following the award here in dispute than it would complying with [the] provision of its own contract ” setting up a wage differential.