**Lawrence E. SANTOS,**
**Plaintiff–Appellee,**

v.

**AMERICAN BROADCASTING COMPA-**
**NY, ABC Television, Inc.,**
**Defendants–Appellants.**

**No. 87–2171.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1988.

Decided Feb. 2, 1989.

Richard E. Rassel, James E. Stewart (argued), Leonard M. Niehoff, Detroit, Mich., for defendants-appellants.

Raymond E. Scott, William H. Honaker, Dennis A. Dettmer (argued), Jon R. Macdonald, Detroit, Mich., for plaintiff-appellee.

Before MERRITT and GUY, Circuit Judges; and JOHNSTONE, District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

Defendants, American Broadcasting Company and ABC Television, Inc. (ABC), appeal from the denial of their motion for a stay of proceeding and order for arbitration. The only issue presented by this appeal is whether the plaintiff, Lawrence Santos, should be allowed to proceed with his district court action in a suit involving a dispute over a contract when the contract requires the parties to arbitrate such dispute. The district court concluded that Santos could proceed since his union had breached the duty of fair representation owed to him, thus relieving him of the requirement of exhausting contract arbitration procedures. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). We disagree and reverse.

**I.**

The facts surrounding this dispute are neither complicated nor contested by the parties. Santos is a professional entertainer who sang and recorded promotional spots for ABC's 1985 fall television programs. Since Santos was a member of the American Federation of Television and Ra-

---

[*] Honorable Edward H. Johnstone, Chief Judge, United States District Court, Western District of Kentucky, sitting by designation.

dio Artists (AFTRA), the relationship between the parties was defined by a collective bargaining agreement (CBA) between AFTRA and the major television networks. This contract specifically provided that "all disputes and controversies of every kind and nature arising out of or in connection with this contract shall be determined by arbitration...." Santos claims that, after completing the work on the promotional spots, he was not paid what was due to him under both written and oral agreements.

In September 1985, Santos verbally informed AFTRA of his dispute with ABC and requested the union's assistance. On November 5, 1985, Santos wrote AFTRA requesting that AFTRA arbitrate his claim or assist him in arbitration. This request was pursuant to Paragraph 95(a) of the AFTRA agreement:

a. AFTRA, the Producer concerned, or (with the written consent of AFTRA endorsed upon the demand for arbitration) the artist concerned, may demand such arbitration in writing. The hearing shall be held and the award made by a single AFTRA–Industry Arbitrator, who shall be named in accordance with the provisions of this Paragraph 95.

Included within the November 5 letter was the following paragraph:

So at this time I would like to know from you what procedures I must now take to file my formal protest and for AFTRA to be a part of the arbitration process on my behalf. I have been a dues-paying member of AFTRA for over 15 years and have never had any problems or had to ask for AFTRA to arbitrate on my behalf. In this case I have no choice but to now ask for that from my union. As you both indicated to me at our meeting; it would be better to handle this misunderstanding ourselves with ABC, within our union code, than to have the court system and media become involved.

On November 14, 1985, AFTRA responded:

I am responding to your letter at this time without going into the merits of your argument because time does not permit. We are in major network negotiations, inclusive of which is the whole question of Singers' promotionals.

When these negotiations are finished—hopefully in the not too distant future—we will pursue your claim to the extent we interpret the meaning of the contractual provision.

When Santos had heard nothing by the end of the year, he retained legal counsel who sent a letter to ABC demanding payment and threatening suit. The letter did not mention arbitration nor was AFTRA sent a copy. On June 27, 1986, Santos' counsel sent a letter to AFTRA which included a copy of his January 31 letter to ABC. This letter concluded:

In our opinion, AFTRA has breached the arbitration provisions of paragraph 95 of the 1982–85 AFTRA National Code of Fair Practice for Network Television Broadcasting and Mr. Santos has a valid claim against ABC, as set forth in my attached letter. In view of AFTRA's failure to set up formal Arbitration as provided in the above-referenced agreement or take any other action to resolve this controversy, we have no alternative but to proceed with litigation and we are hereby putting AFTRA on notice that we are proceeding with a suit against the American Broadcasting Corporation. If you have any objection, please contact us immediately.

When no further action was forthcoming from AFTRA, Santos filed suit against ABC on September 16, 1986. AFTRA was not made a party. ABC responded on October 28, 1986, by filing a Notice of Intention to Arbitrate and Demand for Arbitration with the American Arbitration Association, pursuant to the arbitration provisions of the AFTRA agreement. On October 29, 1986, ABC moved for summary judgment. Santos' response was to amend his complaint and allege unfair representation by AFTRA, allegedly excusing him from the arbitration requirements of the contract. AFTRA was not added as a party.

On January 23, 1987, ABC filed a Motion for Stay of Proceedings and Order for Arbitration. In this motion, ABC argued that, because Santos had merely demanded that AFTRA pursue the arbitration for him but had made no effort to seek AFTRA's consent to his proceeding to arbitration, Santos had failed to exhaust the contractu-

al remedies he was expressly required to pursue under the terms of the AFTRA agreement. On October 22, 1987, the district court denied the motion on the grounds that non-party AFTRA's failure to process Santos' arbitration demand was a breach of the duty of fair representation. The court's opinion did not address the argument made by AFTRA that the contract permits Santos to proceed to arbitration on his own.

## II.

Where the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration. Federal Arbitration Act, 9 U.S.C. §§ 3, 4.[1] Relative to this Act, the Supreme Court has stated:

> The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed. 2d 158 (1985).

It is equally clear, however, that where a union has breached its duty of fair representation, a union member may be excused from the requirement that contract grievance procedures be exhausted. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

There can be little doubt here that the union, AFTRA, has either expressly refused to take this matter to arbitration or by its silence and inaction achieved that result. The failure to take a matter to arbitration does not necessarily mean, however, that a union has breached its duty of fair representation. As the Supreme Court stated in *Vaca,* "the individual employee has no absolute right to have his grievance arbitrated ... and ... a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious...." 386 U.S. at 195, 87 S.Ct. at 919.[2] In *Vaca,* however, arbitration was the last step in a grievance *procedure.* Here, arbitration is the *only* step and where the union refuses to take a matter to arbitration under these circumstances, the matter must be viewed in a different light. The union's alleged breach here is perhaps better cast as a failure to investigate or respond to a proper request for assistance and arbitration.

---

**1. § 3. Stay of proceedings where issue therein referable to arbitration**

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination**

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement....

**2.** It is not at all clear that the district court has made a final finding that AFTRA has breached its duty of fair representation. It appears that the district court had concluded that the *allegation* that AFTRA has breached its duty coupled with the fact that it is not disputed that AFTRA has done nothing, led the court to conclude that "ABC is therefore not entitled to an order *at this time* compelling plaintiff to submit to arbitration." (Emphasis added).

There is another significant difference between this case and the more typical case in which a demand for arbitration is made. Usually one party is claiming the dispute is not arbitrable. Such is not the case here. Plaintiff, Santos, started out seeking arbitration and the defendant, ABC, has filed a formal demand for arbitration and yet the twain seems not to meet.

ABC has asked that the district court stay proceedings pending arbitration pursuant to the Federal Arbitration Act. This request is made in connection with a contract that compels arbitration[3] of disputes, and no one is contesting that this dispute is arbitrable. Thus, the district court is *compelled* to issue a stay order "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S. C. § 3. Thus, the real issue becomes whether ABC is "in default" in connection with its request. This does not implicate the duty of fair representation which is only a threshold question on the issue of whether the employee can sue the employer directly at all. Here, Santos *is* suing ABC, and the response is a demand that the contract grievance procedures be followed. Although the district court did not address this issue, we have an adequate record on which we can resolve it. We resolve it against the backdrop of the strong national policy favoring arbitration.

AFTRA did not take this matter to arbitration but, under the clear contract language, Santos was entitled to do so albeit with AFTRA's endorsement. Santos never specifically asked AFTRA for permission to go it alone. There are many strategic reasons why a union itself might not wish to press contract arbitration, yet have no objection to an employee going it alone. When ABC received its first formal written demand from Santos, it was a demand for payment or else suit would follow. It was not a demand for arbitration nor was arbitration even discussed in the letter. Although this arguably would have been an appropriate time for ABC to request arbitration, we are not prepared to conclude

that its failure to do so places it in default. The contract arbitration provisions set no time limit for seeking arbitration. Also, what is at issue here is money and, if the money is ultimately awarded to Santos, the interest on the award should compensate him for the delay in receiving it. This is not a case involving changed circumstances or irreparable injury. Nor is this a case where the passage of time has prejudiced anyone through loss of witnesses or evidence. The arbitrator will essentially be presented with a contract interpretation issue.

In sum, since we are unable to see how ABC has been advantaged by the delay or Santos prejudiced, we will direct the district court to grant the stay and issue an order compelling arbitration.

REVERSED AND REMANDED.

---

**3.** The contract provides that "the parties agree that [the contract provisions requiring arbitra-

tion] shall be a complete defense to any suit ... instituted in any Federal ... Court...."