**In the Matter of the Application of CBS, INC., Petitioner,**

and

**Neal Pilson, and Ted Shaker, Petitioners–Cross–Respondents–Appellees,**

v.

**James SNYDER, Respondent–Cross–Petitioner.**

**In the Matter of the Application of James SNYDER, Third–Party–Petitioner–Appellant,**

v.

**Brent MUSBERGER; Unnamed Employees of CBS, Inc.; American Arbitration Association, Third–Party–Respondents,**

**Gene Jankowski; George Veras; Jay Rosenstein; Pat O'Brien; WRC–TV; Ed Hotaling; Unnamed Employees of WRC–TV, Third–Party–Respondents–Appellees,**

**American Federation of Television and Radio Artists, Intervenor–Appellee.**

**No. 756, Docket 92–7934.**

United States Court of Appeals, Second Circuit.

Argued Feb. 1, 1993.

Decided March 22, 1993.

Paul T. Shoemaker, New York City (Liddle, O'Connor, Finkelstein & Robinson, Jeffrey L. Liddle, Douglas A. Lopp, of counsel), for respondent-cross-petitioner-third-party-petitioner-appellant James Snyder.

Douglas P. Jacobs, New York City (Anthony M. Bongiorno, of counsel), for petitioners and third-party respondents-appellees Neal Pilson, Ted Shaker, Gene Jankowski, George Veras, Jay Rosenstein and Pat O'Brien.

Irving Brand, New York City (James M. Mills, of Counsel), for third-party respon-

dents-appellees WRC–TV, Ed Hotaling and Unnamed Employees of WRC–TV.

Susan Davis, New York City (Cohen, Weiss and Simon, Thomas N. Ciantra, of Counsel), for intervenor-appellee American Federation of Television and Radio Artists.

Before: MESKILL, Chief Judge, FEINBERG and JACOBS, Circuit Judges.

FEINBERG, Circuit Judge:

James Snyder, popularly known as "Jimmy the Greek," appeals from an order of the United States District Court for the Southern District of New York, William C. Conner, J., that, as to some respondents, denied Snyder's petition to compel arbitration and, as to others, granted a motion to dismiss his petition for lack of personal jurisdiction. Snyder's appeal requires us to determine if he is entitled to arbitrate his claims. We conclude that he is not, albeit for reasons different from those relied on by the district court.

## Background

Snyder is a well-known television football analyst and commentator employed by CBS Inc. (CBS). In January 1988, Snyder gave an interview, unconnected with his employment at CBS, to Ed Hotaling of WRC–TV (WRC), the NBC affiliate in Washington, D.C. During the interview, Snyder made comments about the role of black athletes in sports. In response, CBS fired Snyder and issued a statement condemning his comments as "reprehensible." The next day, CBS Sports broadcasters Pat O'Brien and Brent Musberger read statements on the air describing Snyder's remarks as "regrettable and offensive" and disassociating the network from them.

Nearly three years later, Snyder served a flurry of demands for arbitration before the American Arbitration Association (AAA). Snyder made various tort claims against CBS, several former and present CBS employees, WRC and Hotaling, all growing out of the Hotaling interview and its aftermath. These claims included defamation, business disparagement, injurious falsehood, interference with contractual relations and interference with economic advantage. In addition, Snyder alleged breach of contract by CBS and the president of CBS Sports, claiming that the network failed to honor its promise to exercise an option to renew Snyder's employment contract.

Snyder, a member of the American Federation of Television and Radio Artists (AFTRA), demanded arbitration with CBS and CBS managerial employees Neal Pilson, Ted Shaker, George Veras and Gene Jankowski. O'Brien and Musberger were also served with demands, as were unnamed employees of CBS.[1] These demands were based on arbitration clauses in a collective bargaining agreement known as the 1985–88 AFTRA National Code of Fair Practice for Network Television Broadcasting (the National Code). The named parties to this agreement were CBS and AFTRA. Snyder also demanded arbitration with WRC, Hotaling and other employees (unnamed) of WRC. These demands were based on arbitration clauses in a collective bargaining agreement known as the 1987–90 AFTRA Code of Fair Practice for Washington Broadcasting (the Washington Code). The named parties to this agreement were NBC and AFTRA, specifically including its Washington Local.

In response to Snyder's demands, CBS, Pilson and Shaker petitioned in New York State Supreme Court to stay the arbitrations. WRC, Hotaling and unnamed employees of WRC did the same a few weeks afterward. Snyder then removed the state proceedings to federal court. A short time later, the AAA dismissed Snyder's demands for arbitration against all those previously mentioned except CBS, on the ground that Snyder had no arbitration agreement with anyone except CBS. Meanwhile, AFTRA successfully moved to intervene in the federal court proceeding.

Snyder thereafter filed with the district court a "Petition, Cross Petition and Mo-

---

1. At all relevant times, Pilson was the President of CBS Sports; Shaker was the Executive Producer of CBS Sports; Veras was a Producer with CBS Sports; Jankowski was the Vice–President of the CBS Broadcast Group; O'Brien was a broadcaster with CBS Sports; and Musberger was a broadcaster with CBS Sports and the Managing Editor of "NFL Today."

tion to Compel Arbitration" directed against Pilson, Shaker, Jankowski, Veras, Rosenstein, O'Brien, Musberger and unnamed employees of CBS (CBS–Respondents) and against WRC, Hotaling and unnamed employees of WRC (WRC–Respondents).[2] Snyder did not name CBS in his motion to compel since the network had previously conceded its obligation to arbitrate. In a thorough opinion, reported at 798 F.Supp. 1019, the district court denied Snyder's motion and granted a motion by the WRC–Respondents to dismiss for lack of personal jurisdiction.

This appeal followed.

### Discussion

The district court's disposition, with respect to the CBS–Respondents and (by implication) the WRC–Respondents, turned on its conclusion that Snyder had no agreement to arbitrate with anyone other than CBS. The court therefore found it unnecessary to reach other arguments advanced by respondents below. While we do not disagree with the district court's decision to deny Snyder's motion, we affirm on a ground that the district court did not discuss.

AFTRA and the WRC–Respondents argue that under the terms of the National and Washington Codes, Snyder can proceed with his demands for arbitration only if those demands are endorsed by AFTRA. Paragraph 95(a) of the National Code specifically states that

AFTRA, the Producer concerned, or (with the written consent of AFTRA endorsed upon the demand for arbitration) the artist concerned, may demand such arbitration in writing.

A similar provision is contained in the Washington Code at paragraph 31(a).[3] AFTRA submits that these provisions give it "discretionary power over whether an individual member may arbitrate against a signatory employer." No one disputes that AFTRA endorsed Snyder's demand only as against CBS. Consequently, AFTRA argues that its refusal to endorse Snyder's other demands "is determinative of the parties' duties to arbitrate under the collective bargaining agreements" and "precludes [Snyder's] efforts to compel ... arbitration."

Although Snyder does not respond to this argument in his briefs on appeal, he did respond to it in papers submitted to the district court. Quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964), Snyder pointed out that "[o]nce it has been determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on the final disposition should be left to the arbitrator." According to Snyder, whether or not he could compel arbitration in light of paragraphs 95(a) and 31(a) and AFTRA's refusal to endorse his demands constituted a "procedural issue to be determined by the arbitrators."

Snyder's argument in the district court was not a frivolous one, and we believe we should address it even though Snyder did not repeat it in his briefs in this court in response to AFTRA and the WRC–Respondents.[4] Snyder is correct that questions of "procedural arbitrability" are usually left for the arbitrator to decide unless, as this court has put it, "the intended preclusive effect of a procedural provision and the fact of breach are both so plain that no rational mind could hurdle the barrier." *Rochester Tel. Corp. v. Communication Workers,* 340 F.2d 237, 239 (2d Cir.1965) (per curiam) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *John Wiley & Sons, Inc.,* 376

---

**2.** Jay Rosenstein, designated here as one of the CBS–Respondents, was at all relevant times a Publicist with CBS Sports. Rosenstein was not named in Snyder's original demand for arbitration filed with the AAA.

**3.** The paragraph reads in pertinent part:
AFTRA, the Company or Producer concerned, or (with the written consent of AFTRA en-

dorsed upon the demand for such arbitration) the artist concerned, may demand such arbitration in writing....

**4.** The district court did not find it necessary to reach this issue because the court concluded, in essence, that none of the respondents had agreed to arbitrate Snyder's claims against them.

U.S. at 557–58, 84 S.Ct. at 918–19). However, we are not at all sure that the question here is "procedural" since it goes to Snyder's right to demand arbitration at all. Moreover, even if it were, we would be inclined to hold that the "severe test" stated in *Rochester Telephone*, 340 F.2d at 239, was met.

In any event, we believe that we are not required to grapple further with the problem, for we think the issue before us is controlled by the rationale of our decision in *Black–Clawson Co. v. International Ass'n of Machinists Lodge 355*, 313 F.2d 179 (2d Cir.1962). In *Black–Clawson*, an individual employee sought to compel his employer to arbitrate a grievance for wrongful discharge. The court found that the provisions establishing the grievance procedure allowed only the union and the employer to invoke arbitration, and therefore concluded that "the terms of the grievance procedure in the collective bargaining agreement before us give the employee ... no right to compel [the employer] to submit to arbitration." *Id.* at 183–84; see also *Gangemi v. General Elec. Co.*, 532 F.2d 861, 866–68 (2d Cir.1976); *Trompeter v. Boise Cascade Corp.*, 877 F.2d 686, 687 (8th Cir.1989).

The *Black–Clawson* court's interpretation of the plain language of the collective bargaining agreement was backed by a "sound view of labor-management relations." *Black–Clawson*, 313 F.2d at 186. As the court explained:

> The union represents the employees for the purposes of negotiating and enforcing the terms of the collective bargaining agreement. This is the modern means of bringing about industrial peace and channeling the resolution of intra-plant disputes. Chaos would result if every disenchanted employee, every disturbed employee, and every employee who harbored a dislike for his employer, could harass both the union and the employer ... by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union.

*Id.* (citations omitted).

This view is still sound today. We would add only that the apparently atypical provisions of paragraphs 95(a) of the National Code and 31(a) of the Washington Code actually give an individual employee more opportunity to bring an arbitration on his own than did the provision under scrutiny in *Black–Clawson*. As the Sixth Circuit recognized in another case involving paragraph 95(a) of the AFTRA National Code, "[t]here are many strategic reasons why a union itself might not wish to press contract arbitration, yet have no objection to an employee going it alone." *Santos v. American Broadcasting Co.*, 866 F.2d 892, 895 (6th Cir.1989). The union here, however, obviously felt that this was not such a case.

Applying the teaching of *Black–Clawson* to the present case, we observe that paragraphs 95(a) of the National Code and 31(a) of the Washington Code unequivocally indicate that an individual artist-employee may not proceed to arbitration unless and until he receives AFTRA's endorsement. When they signed the National and Washington Codes, AFTRA and the respective employer-producers agreed that an artist could press a grievance individually only if he received AFTRA's endorsement. Because AFTRA here rejected Snyder's request to endorse his arbitration demands against the CBS– and WRC–Respondents, Snyder had no right to compel them to submit to arbitration.

According to AFTRA's brief in this court, one of the reasons why it refused to endorse Snyder's demands against several of the respondents was that "[i]t simply is not a union's function to broker disputes between individual [union] members." Of course, if AFTRA's refusal to endorse Snyder's demand was "arbitrary, discriminatory, or in bad faith," *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), Snyder was not without recourse. Under those circumstances, he would be entitled to bring a civil action against AFTRA, alone or joined with CBS, or to file an unfair labor practice charge against AFTRA alleging that the union had breached its duty of fair representation. See *Breininger v. Sheet Metal Workers Local 6*, 493 U.S. 67, 83, 110 S.Ct. 424, 434, 107 L.Ed.2d 388 (1989); *NLRB v. Local 282, Interna-*

*tional Bhd. of Teamsters,* 740 F.2d 141, 146 (2d Cir.1984). Snyder is not entitled, however, to compel arbitration without AF-TRA's endorsement.[5]

Accordingly, the judgment of the district court is affirmed.

---

**5.** We do not suggest that even with AFTRA's endorsement Snyder would have been entitled to compel respondents to arbitrate. As already indicated, the district court, for different reasons, decided that Snyder was not so entitled. We simply do not reach that question.